Austin *v.* Daniels.

STEPHEN G. AUSTIN, Receiver of the Commercial Bank of Buffalo, *vs.* SPENCER DANIELS.

The Commercial Bank of Buffalo had no power to deal in state stocks.

Where the officers of a bank purchased state stocks to carry on a private undertaking in which they were engaged, and signed a contract obliging the bank to pay for the same, and then took money from the bank to fulfil such engagement; *held* that they were liable to the receiver for the money so taken.

And where the money for such purpose was taken by the cashier, with the assent of the president, who was the financial officer of the bank; *held* that such assent did not protect the cashier, it appearing that he was a party to the private enterprise in which the money was to be used.

The officers of the bank are the agents of the corporation, and are liable for an abuse of their trust wherever the agents of an individual would be.

MOTION to set aside the report of referees. The defendant was the cashier of the Commercial Bank of Buffalo until the end of July, 1841, when he resigned. The bank failed and its effects passed into the hands of the plaintiff as receiver about five months afterwards. The plaintiff claimed to recover the balance of the defendant's individual account appearing upon the ledger, amounting to $2035,07. Two items on the debit side amounting to $614 were considered erroneous by the re-

ferees—and the finding in that respect is acquiesced in by the plaintiff—which reduced the balance to $1421,07, which the referees reported due to the plaintiff. There was another item on the debit side of the ledger, of $11,250, of the date of November 12, 1840, and an item of credit of the same date of $8,870, which the defendant insisted were not individual transactions, and did not belong to his account. As to this, it appeared that Mr. Hatch the president who was the financial officer of the bank, and the defendant in this suit, the cashier, were engaged in establishing the Union Bank, an institution under the general banking law, and for that purpose bought on credit $100,000 of Illinois state stock, pledging or attempting to pledge the responsibility of the Commercial Bank of Buffalo therefor, the defendant signing the contract for the stock, as cashier. To pay for this stock, scrip for stock in the Illinois Canal and Rail-Road Company was purchased; and the sum of $11,250 above mentioned was taken from the Commercial Bank by the defendant, with the assent of Hatch the president, to enable the former to go west and make the purchase. The canal and rail-road stock was accordingly purchased and applied towards the payment for the Illinois state stock, and the Union Bank went into operation. The referees allowed these items to stand in the account and reported accordingly.

*N. Hill, Jun.* for the defendant, cited *The Bank of Vergennes* v. *Warren,* (7 *Hill,* 91.)

*D. Wright,* for the plaintiff.

*By the Court,* BEARDSLEY, J. There is no error in this case of which the defendant can complain, and none is alleged on the part of the receiver.

It may be collected from the report of the referees, although the evidence is not stated with much detail or particularity, that Hatch and the defendant, the president and cashier of the bank now represented by the receiver, were engaged in 1839 or 1840, in establishing a new banking institution, called the Union

Bank, under the general banking law of 1838. That with a view to this object a purchase was made, on credit, of stock of the state of Illinois, for which they assumed to give the security of the bank of which they were such officers. For this no authority existed. The bank had no power to deal in state stocks, and the president and cashier had as little to pledge its responsibility, such as it was, for their individual engagement. Subsequently, and in order to pay for this state stock, the defendant made a purchase of Illinois canal and rail-road stock, in doing which this sum of $11,250 appears to have been taken from the Commercial Bank and used by him. It was done by the assent of the president, who had the principal charge and management of the bank: but this, although it may show that the president was equally liable with the cashier, can afford no protection to the latter. The money was not received by him for any purpose connected with the proper business of the bank; but was taken, without the semblance of lawful authority, to be used in the private and individual business of these parties. True, there was an effort to mix up the concerns of these two institutions, but it was merely colorable, and being, as to the Commercial Bank at least, entirely unauthorized, the rights of that institution, and the liability of the parties by whom that effort was made, were in no degree affected thereby.

As far as I comprehend the principle on which this defence was supposed to be available, it must have been that while bank officers assumed or pretended to be acting on behalf of, and for the benefit of the institution of which they were officers, they could, in no case, be held responsible to the corporation for what was done. But this is a point of doctrine to be established, and which has not yet been done. Bank officers are but agents of the corporation, and if they transcend or abuse their powers are as much responsible to their principal as are the agents of an individual. This ought to be regarded as too plain to require argument or authority, and I shall offer neither.

In this case it was not denied that the defendant had received the sum in question. He received it either to be used for the bank in the purchase of canal and rail road stock, or to be used for

the benefit of the owners of the Union Bank—" *the concern*," as designated by one of the witnesses. The first was an illegal object, and the second was at least equivalent to a loan of the money to the person who took it. And in either aspect the defendant was responsible for the money.

Motion to set aside report denied.