MARCH TERM, 1864, AT ST. LOUIS.

[CONTINUED FROM VOL. XXXIV.]

35 13
114 228

35 13
133 553

35 13
161 604

THE OHIO AND MISSISSIPPI RAILROAD COMPANY, Respondent, *v.* WILLIAM M. MCPHERSON, Appellant.

*Corporation—Directors.* — The directors are the agents of the corporation, not the corporation itself; although they meet without the limits of the State creating the corporation, yet their proceedings will be valid and binding upon the company. Where a charter granted by the State of Illinois declared certain persons to be a corporation, and named the directors thereof, such directors could meet and act in the State of Missouri.

*Corporation—Stock Subscription—Estoppel.*—Where the directors named in the act of incorporation met and organized the company without the limits of the State granting the charter, one who has subscribed for the stock of the corporation by its corporate name, and paid instalments called for by the directors, is precluded by his own acts from denying the lawful existence of the corporation.

*Corporation—Election—Directors—Estoppel.*—Where the corporators met without the limits of the State granting the charter, and elected a board of directors, and such board made a call for payment upon the subscription to the stock of the corporation, a subscriber to the stock cannot, when sued

2—VOL. XXXV.

for the call thus made, object to the legality of such election. The parties thus elected are directors *de facto,* and the legality of their election cannot be inquired into collaterally, without showing a judgment of ouster against them in a direct proceeding for that purpose, by the government creating the corporation.

(Bates, C. J., dissenting.)

*Appeal from St. Louis Circuit Court.*

*J. R. Shepley,* for appellant.

I. A corporation authorized to be constituted under an act of the Legislature cannot accept any agreement payable to it, or for its benefit, until the prerequisites have been performed to give it a corporate existence. (Wilm. & M. RR. v. Wright, 5 Jones, Law, 304.)

II. All votes and proceedings of persons professing to act in the capacity of corporators, when assembled beyond the bounds of the State granting the charter of incorporation, are wholly void. (Ang. & Ames on Corp., § 498; Runyan v. Costar's Lesses, 14 Pet. 128; Miller v. Ewer, 27 Me. 509; Freeman v. Machias W. & M. Co., 38 Me. 243; Oh. & Miss. RR. Co. v. Wheeler, 1 Black, U. S., 286; Bank v. Adams, 1 Pars. Sel. Cas. 548; Bk. of Augusta v. Earle, 13 Pet. 519.)

1. There can be no valid acceptance of the charter out of its territorial limits.

The idea that the act *proprio vigore* erects the persons named into a corporation is simply absurd; otherwise, any body of men applying for one kind of charter, and obtaining a different one, would find themselves erected into a corporation against their will and without the possibility of avoiding it.

2. The meetings of the persons named as directors in the charter, even if the charter were accepted, are invalid.

3. There can be no valid election of directors out of the limits of the State creating it, even if it had corporate existence.

If anything can be said to be conclusively decided both upon principle and authority, it would seem to be that a

Ohio & Mississippi Railroad Co. v. McPherson.

meeting of a corporation out of its territorial limits for the purpose of electing the officers vested with the supreme control, and who are clothed *pro hac vice* with all the corporate powers, is, and in the nature of things must be, a nullity.

III. The act of the General Assembly of the State of Missouri in relation to the plaintiff, in no way gives any greater powers or affects the validity of the acts in question. (O. & M. RR. v. Wheeler, 1 Black, U. S., 286.)

1. It only gives power to the corporation which may have been organized under the law of Illinois to hold lands, &c., and without it they would have no such power. (Runyan v. Coster's Lesses, 14 Pet. 129.)

2. As it attempts not to create a corporation, the preamble that there is one existing chartered by the laws of Illinois, cannot possibly have the power to create that which legally had no existence prior to the passage of the act of the State of Missouri.

IV. If a corporation has no legal existence, or if any acts of a corporation are void, no act of a corporator or stockholder can give vitality to the one, or legalize and make valid the other.

1. As to the existence of the corporation. This will not be denied; but its effect will be sought to be avoided by contending that a stockholder, or subscriber to stock, is in no position to dispute it, and authorities will be quoted sustaining such a view. But whether this be so or not, and admitting it for the sake of the argument to be so, yet it does not save this case unless these acts are an admission that the calls were legally made.

2. As to the legality of calls. As to this, no act of a subscriber to stock can bind him to the validity of an illegal call, unless, perhaps, in the case of a part payment of the particular call in question; though it is not perceived upon what principle this can be sustained.

V. If the calls, or any of them, made upon the defendant, were made without competent authority, they are void, and

no action for any amounts payable under such calls can be maintained.

VI. The meeting of the stockholders held at Bloody Island, in Illinois, had no other effect than to give vitality to the company from that date.

1. It could not by its acts create a corporation from March, 1851.

*a.* The meeting was not called for any such purpose, professing to be for the election of directors only; and without such call its acts in that behalf are invalid. (Atlantic Delaine Co. v. Mason, 5 R. I. 471.)

*b.* It could not by its acts give vitality to what could be done by the board of directors alone. The call was as if none had ever have been attempted to be made. Certainly, no meeting of the stockholders could of itself make a valid call. By the terms of subscription, the call was to be made by the board of directors, and it was not competent for the corporation to say that one had been made when in fact one had not been made. For the purpose of the argument it may be conceded, that the action of the meeting in 1857 was a ratification of any conveyance or mortgage of the company's property, and yet not be at all operative to make that a call when none in fact had been made. The subscribers could only be bound by the way and in the manner provided in the terms of their subscription, and no action of that meeting could deprive each subscriber of his right to have the calls made upon him in the manner provided by the terms of his subscription.

2. The whole proceedings are an admission that all previous action was illegal and void.

VII. There have never been any legal and valid calls upon the defendant for his subscription, or at any rate for that portion which still remains unpaid, even conceding that the board in the charter named were in existence; for,

1. All the calls were made at meetings of the board held in the city of St. Louis.

2. The third call was not made by a majority of the di-

rectors named in the charter. A majority of the board must be present to do any act. (Ang. & Ames on Corp. sec. 501.)

3. The fourth call was made when not a single member of the board of directors named in the charter was present, and only six members present. As the defendant has paid thirty per cent. of his subscription, it is entirely unimportant whether the first two calls, together only amounting to ten per cent., were legal or not. That has been paid, and an amount more than the twenty-five per cent. mentioned in the charter has been paid; so that, as to the calls, the question is narrowed down to the legality of the third and fourth calls, and about these it does not seem that there can be any serious question as to their invalidity.

VIII. These calls cannot be supported under the idea that they were made by *de facto* directors, and are therefore good; for,

1. Whenever it is found that an official act cannot be supported in any way, but is obviously illegal, this theory is uniformly adopted as all-sufficient to cover up any amount of illegality; as claimed here, there is no illegality it would not cover and no rascality it would not protect. Why should any corporation have legal directors when illegal would do just as well? It would render those corporations totally irresponsible to the power which created them.

2. In all the cases cited there is and must be some show of legality; but here is an instance of the violation of the first principles of its being. It might just as well be contended, that if the company had elected directors in Africa, and they had made their calls from Timbuctoo, the fact that they "wrote themselves down" as directors made them so, and the calls there made were valid. No case will be found where the vital laws of its being are violated, that any act of an alleged *de facto* officer can be supported.

3. The principle contended for here would have protected all the acts of directors which in the cases cited by us have been decided to be illegal, inoperative, and void.

4. The cases that may be cited will be found to be mainly those where it is held, that as against the corporation the act of the persons whom the corporation held out to the world as its officers ought to bind the corporation.

*S. T. Glover*, for respondent.

I. The statute of Illinois (Sess. Acts of Ill., p. 89, 1851) created a corporation *per se*. Section 1 of this statute declares that certain persons "are thereby constituted a body corporate and politic by the name and style of the Ohio and Mississippi Railroad Company." Sec. 6 of the same statute (p. 92) appoints a board of directors, and vests in them "all the corporate powers of the company." Such a charter gave being to the corporation in perfect form the moment the persons named proceeded to use the granted franchises.

In 10 Wend. 269, the court say " that the plaintiffs are a corporation was proved by the production of the statute declaring them to be so"; the case is different from corporations which are to become entitled to corporate powers by something to be done by them *in futuro*. In these last cases "proof of *user* under the charter must be produced."

When the persons to whom a charter is granted execute the powers granted, that is an acceptance of the charter from which they cannot discharge themselves. (Ang. & Ames on Corp. 69.) In this case the railroad from Illinoistown to Vincennes was built and put in operation. The corporate franchises, then, were not only created, but were accepted. (3 N. H. 367, 371; 2 Fairf. 227; 7 Pick. 334; 7 Mass. 187; 4 Shepley, 224; 3 Metc. 133; 2 Gibbs, Mich., 397; 1 Wend. 555; 3 Wend. 296; 7 Wend. 539; 4 Denio, 392.)

II. When a corporation has once been put into existence in this way, its existence can no longer be questioned or disputed by mere private individuals. Whether the sovereign authority of the State will take away the charter is a question of public policy. The State may waive its right to seize and annul the charter, or it may exercise the right when cause exists; but if the State do not object, no nonuser nor

misuser will affect the corporate existence. (6 Cow. 23; 4 Rawle, 9; 16 Mass. 94; 2 Blackf. 367; 24 Barb. Sup. Ct. 395; 16 S. & R. 145.) The question whether the corporation exists, or shall exist, is one between the plaintiff and the State, and not one with the plaintiff and defendant.

III. The directors who were appointed by the charter being legal directors, and the corporation having attained perfect existence, and being put fully into operation by their doing the work contemplated by the charter, it is immaterial whether subsequent directors were regularly and legally chosen or not. Any directors coming in by consent or acquiescence, and acting *colore officii*, would be *de facto* directors, and their acts would be valid. (4 Rawle, 9; 12 Wheaton, 70; Ang. & Ames on Corp., t. p. 104–5, and the cases there cited.)

IV. But there was nothing in the objection that the directors or corporators held their meetings in Missouri. (6 Conn. 429; 3 Duer, 648; 14 Peters, 122.) No good reason can be given for prohibiting such action. (13 Peters, 519) 27 Maine, 509, is in point for defendant as to proceedings by a board out of the State being void. This case was ruled on a mistaken view of 13 Pet. 588. No reason has ever been advanced why a board cannot sit out of the State, while every other act can be done there.

V. The defendant, by contracting with the company, and by participating in the proceedings of the corporation, voting his stock, &c., is estopped to deny the corporate existence. (5 Ala., N. S., 807–8; 16 Mass. 87; 16 S. & R. 145.) "If defendant accepted the charter and acted on it, * * * * it does not lie in his mouth to object." (2 Mo. 137.)

VI. Irregularities and defects in organization, whether material or immaterial, cannot be drawn into view by a debtor as a defence to calls. (16 B. Mon. 7, 471; Redf. on RR. 85; id. 9; 1 Sandford, 168; Ang. & Ames, 85, 636; 16 Ala. 374; 16 S. & R. 145; 9 Wend. 351; 4 Denio, 392; 27 Penn. 387; Grant on Corp. 292.)

*W. Homes*, for respondent.

I. *a.* The Ohio and Mississippi Railroad Company is a corporation by the laws of the State of Illinois, created and declared to be a corporation in express terms, without condtions precedent; a creation ready for action, organized by the sovereign power creating it by the appointment of the board of directors. The corporation came into perfect being, full fledged, and ready for action, the very instant the act creating it was passed and approved. (Laws of Ill., Sess. 1851, p. 89, § 16.)

*b.* The existence of the corporation was afterwards recognized by the sovereignty creating it, its franchises confirmed, the corporate rights declared to be in full force, and all causes of forfeiture waived. (Laws of Ill., Sess. of June, 1852, p. 122; id. Feb., 1853, p. 92; id. 1854, p. 78.)

*c.* The Legislature of Missouri recognized the existence of the corporation at the Session of 1853, and conferred certain privileges upon it. (Laws of Mo. 1853, p. 365.)

II. When the act of incorporation not only gives in terms all the requisites to constitute a corporation, but technically designates it as a corporation, and declares that · it is such, its existence cannot be questioned. Organization has nothing to do with it. (Falconer & Higgins v. Campbell, 2 McLean, 199; Ang. & Ames, 69; Fire Department v. Kip, 10 Wend. 269.)

III. The actual valid existence of the corporation may be proved in other ways than by the production of the charter. When there have been corporate acts done, meetings held, the enterprise commenced and prosecuted for which the charter was conferred, this is proof of the legal existence of the corporation and its acts, and courts will not question it in a proceeding of this kind. (McFarlan v. Triton Ins. Co. 4 Denio, 392; Sampson v. Bowdoinham Mill Co., 36 Me. 81; Jones v. Dana, 24 Barb. 398; Trott v. Warren, 2 Fairf. 227; Grant on Corp. 23; Ang. & Ames, 69, 85, 635; Redfield, 11; id. 18, n. 3.)

IV. *a*. There may be irregularities in the organization of the company; there may be an omission of certain acts enjoined by the charter and deviations from the requirements of the Legislature, and these may be of greater or less moment, and yet the existence or rights of the corporation be unaffected thereby. Those powers do not necessarily abate by defect of organization. (16 S. & R. 145; 1 Sandf. Sup. Ct. 168; 16 Ill. 358; 4 Denio, 392; Grant on Corp. 292; Redfield, 8.)

*b*. And such irregularities or defects cannot be drawn into view by a debtor as a defence to calls. (16 B. Mon. 7; 9 id. 471; Redfield, 85; id. 9; 1 Sandford, 168; Ang. & Ames, 85, 636; 16 Ala. 374; 16 S. & R. 145; 9 Wend. 351.)

*c*. And any such objection, to be raised by a debtor or other party, must be done in reason, *in limine*. If he intends to hold the company to an observance of all forms, he must do it at the earliest; a brief acquiescence will conclude him. If shareholders allow parties to act as directors, deal with them, recognize their acts, comply with their demands, vote the stock, and do business with the corporation, they are precluded from denying their liability in an action of this kind; it is too late to object to the validity of the organization, or the existence of the corporation. (9 Wend. 351; 2 Mo. 137; 5 Ala. 807–8; 1 Sandf. Sup. Ct. 168.)

V. *a*. The continued existence of a corporation which for any cause may have forfeited its charter, or incapacitated itself for legal action, may be recognized by subsequent acts of the Legislature; and this cures defects and waives forfeiture. (16 Ill. 358; 9 Wend. 351.)

*b*. The corporation itself in a legal manner may ratify past proceedings legal or illegal, or informal, or otherwise, and so cure defects. (3 Fairfield, 312; 14 Shepley, 509, 520, 521.)

VI. A corporation is a creature of the sovereign power of the State, receives its life from it, and can be declared dead only by the State. The State, only, can inquire into the va-

lidity of acts done. It cannot be done in any collateral proceeding; it must be done in a direct proceeding instituted by the State; third parties cannot raise the question. If the State sees fit to decline the inquiry, it cannot be demanded by others, and least of all by debtors when the corporation seeks to enforce claims. (1 Sandford, 168; 16 B. Mon. 7; 24 Barb. 398; Redfield, 9, 18, 493, 603; 16 Ala. 374; Grant, 292; 9 Wend. 351, 382; Aug. & Ames, 85, 636; 16 S. & R. 145; 27 Penn. 387; 4 Denio, 392; 9 B. Mon. 471.)

VII. A corporation is not limited to any one place in exercising corporate functions when it is not inhibited by the charter, or by the laws or general policy of the State where the corporation assumes to act, or of the State bringing it into being. (3 Fairf. 312; 3 Duer, 648; 2 Kent, 585, n.; 6 Conn. 428, 436; 13 Peters; 14 id.)

DRYDEN, Judge, delivered the opinion of the court.

This suit was commenced the 28th November, 1858, and was for the recovery of fourteen hundred dollars and interest, being a balance of the larger sum of two thousand dollars, subscribed by the appellant on the 28th of March, 1851, to the capital stock of the Ohio and Mississippi Railroad Company, the respondent. There seems to be no dispute about the facts in the case, but about the law arising upon them. The facts as disclosed by the record, so far as are material to the questions arising, are as follows:

The plaintiff was incorporated by an act of the Legislature of the State of Illinois, approved February 12, 1851; by the first section of which the persons named therein, "and such other persons as might associate with them for that purpose, are hereby [were thereby] made and constituted a body corporate and politic by the name and style of the Ohio and Mississippi Railroad Company, with perpetual succession," &c., &c. The purpose of the corporation was the construction and operation of a railroad commencing at Illinoistown, on the east bank of the Mississippi, running

thence to the east line of the said State in the direction of the city of Vincennes, in the State of Indiana. The act of incorporation vested the corporate powers of the company in a board of directors to consist of not less than seven nor more than seventeen in number, and such other officers, agents and servants as they should appoint; and named the first board, consisting of thirteen persons, who, by the provisions of the act, were to hold their offices until their successors should be elected and qualified; and provided that vacancies in the board might be filled by a vote of two-thirds of the directors remaining, the appointees to continue in office until the next regular annual election of directors, which was required to be held on the first Monday of September in each year, at such place as the directors might appoint. A meeting of the board appointed in the charter was held in the city of St. Louis, Missouri, on the 28th of March, 1851, at which certain rules and regulations as to the rights and duties of stockholders (not necessary to be detailed here) were adopted, and a form of obligation was prescribed to be signed by subscribers for stock in the company. The following is the form of obligation thus prescribed, and is the same which was subscribed by the defendant and on which this suit was brought, viz. :

"We, whose names are subscribed hereto, do promise to pay to the Ohio and Mississippi Railroad Company, incorporated by the State of Illinois, the sum of fifty dollars for every share of stock set opposite to our names respectively, in such manner and proportions and times as shall be determined by such company in pursuance of the charter thereof and of the preceding resolutions of the board of directors. Witness the —— day of ——, A. D. 18—.

" *Shares of fifty dollars* ($50) *each*.—John O'Fallon, 1,000 shares ; P. Chouteau, Jr. & Co., 200 ; George Collier, 50 ; Wm. M. Morrison, 50 ; John Tilden, 10 ; Henry Chouteau, 20 ; Wiggins Ferry Company, by the several proprietors, 400 ; Chambers & Knapp, 40 ; A. J. P. Garesché, 10 ; L. M. Kennett, 40 ; C. P. Chouteau, 40 ; Adolphus Meier & Co.,

20; Bridge & Brother, 20; Joseph Charless, 20; E. W. Clark & Bros., 40; John Smith, 10; John J. Anderson, 10; Wm. M. Pherson, 40" (and others).

Four calls for payment of subscriptions to stock were ordered by the board, all at meetings of the board in the city of St. Louis: the first on the 25th of September, 1851, for two and a half per cent.; the second on the 19th of November, 1851, for seven and a half per cent.; the third on the 5th of August, 1852, for thirty per cent., and the fourth on the 12th of August, 1853, for the remainder (sixty per cent.), to be paid in instalments of five per cent. on and after the 1st of October, 1853, till fully paid; of which several calls the appellant had due notice. At the meetings of the board at which the first and third calls were ordered there were present six of the thirteen members appointed in the charter, with, in one instance, one, and in another two appointees of the charter members; the second call was ordered by a meeting of seven of the charter members and two of their appointees; the fourth call was ordered by a meeting of directors, elected at a stockholders' election held in the city of St. Louis on the 6th of September, 1852—none of the directors in this meeting being charter directors. The appellant paid to the respondent on his liability arising upon his said subscription, on the 22d of March, 1852, the sum of one hundred dollars, and on the 3d of September, 1853, the further sum of five hundred dollars; and in an interview had between the defendant and the treasurer of the company on the subject of the appellant's said liability after the year 1855, and after the completion of the road, he admitted his liability and expressed his willingness to pay when called on. A meeting of the stockholders of the company was held in St. Louis on the 4th of September, 1854, in the proceedings of which the appellant participated, voting with the majority in the adoption of measures looking to the accomplishment of the objects of the corporation. The avails of stock sold were used in building the road, and the road was completed on the 30th of June, 1855.

A recovery in the case was resisted on two grounds: first, that the facts were insufficient to show an acceptance of the charter, and therefore the plaintiff was not shown to have any corporate existence; secondly and mainly, that the votes and proceedings of the stockholders and directors when assembled in St. Louis, beyond the bounds of the State granting the respondent's charter, were wholly void, and therefore that the calls which were ordered in St. Louis, and in one instance by a board elected in St. Louis, were invalid, and imposed no obligation on the appellant to respect them.

1. As to the corporate existence of the respondent. It is maintained by the counsel for the appellant, that no acts of the board of directors performed beyond the territorial limits of the State from which the charter enunciated could be a valid acceptance of the charter. In support of this position reliance is had chiefly on Miller v. Ewer, 27 Me. 509: that was a writ of entry for a tract of land, in which the demandants derived their title from the Bluehill Granite Company, incorporated by an act of the Maine Legislature. On the trial, it appeared that the meeting of the corporators was called for the organization of the corporation under its charter in the city of New York, and that the charter was there accepted and the officers of the corporation (president, directors, and secretary) were chosen. At a meeting of the directors thus elected, held in the city of New York, a resolution was adopted directing the president and secretary to execute the conveyance under which the demandants claimed title. There was no proof that any meeting for the organization of the company, or for the choice of its officers, had ever been holden in the State of Maine; but there was proof that the company, by a person acting as its agent, transacted business in the State. The question involved in the case involved the validity or invalidity of the conveyance thus made by the president and secretary in behalf of the company. The court decided it was void, but placed its decision not on the ground that the board of directors ordering the execution of the conveyance met at a wrong place, but alone

on the ground that the election of the directors by the stock-holders having been held outside of the State, and because held out of the State was void, and gave the directors thus chosen no legal authority to convey or to direct the convey-ance of the corporate property. The opinion in the case, while it denies extraterritorial power to corporators, concedes it to directors. The court says, "the directors of a corporation are not a corporate body; they are, when acting as a board, but a board of officers or agents, and they may exercise their powers as agents *beyond the bounds where the corporation exists.*" In the present case, the charter created a corpora-tion *in presenti*, and appointed a board of directors without the necessity of any action on the part of the corporators; and if any assent was necessary to infuse life into this body politic, the proceedings of these directors, although had be-yond the bounds and limits of the State of Illinois, were, according to the authority quoted, a sufficient expression of that assent.

But, aside from the question whether the action of the board of directors beyond the bounds of the State was a suf-ficient expression of assent to give vitality to the corpora-tion, the appellant's position towards the respondent is such as ought to preclude him from denying its corporate exist-ence. The case of the Dutchess Cotton Manufacturing Com-pany v. Davis, 14 John. 238, was a suit on a promise to pay the price of stock subscribed by the defendant. The court, on the authority of Henriques v. The Dutch West India Company, 2 Ld. Raymond, 1535, held that the defendant having entered into a contract with the plaintiffs in their corporate name, thereby admitted them to be duly consti-tuted a body politic and corporate.

The appellant having contracted with the respondent in its corporate name, paid his money to it as an existing liv-ing thing in answer to its corporate demands, and from year to year having attended meetings of its stockholders and voted at elections and upon questions which clearly implied the respondent's existence, he ought to be estopped from

denying what he has thus often and so solemnly admitted. (All Saints Church v. Davis, 1 Hall, N. Y., 191; John et al. v. Farm. & Mech. Bk. of Ind., 2 Blackf. 367; Chester Glass Co. v. Dewey, 16 Mass. 94.)

2. As to the invalidity of the calls. In the examination of the case under the first objection urged to the respondent's right to recover, I think I have shown that the first three calls, as they were ordered by the Directors, the validity of whose appointment was not controverted, were subject to no valid objection, although ordered by the board when in session beyond the territorial limits of Illinois. But the alleged invalidity of the fourth call rests upon a total denial of official authority in those who ordered it. This call, as has been seen, was ordered by a board chosen by the stockholders of the company at an election in the city of St. Louis; and it is insisted on the authority of the case of Miller v. Ewer, already cited, that this election, by reason of the place where it was held, was a nullity, conferring no authority whatever on the persons chosen. I am not disposed to question the soundness of that decision in its application to the facts of that case, but I am unwilling to extend the principle there laid down to a case materially differing in its circumstances, as I think the one under consideration does. In that case, at the time the obnoxious election was held the corporation had no existence—it had not yet come into being; and, there being neither corporators nor corporation, no valid official authority could be communicated by such election: but in this case, at the time the election occurred to which objection is made, the corporation was, and for more than a year had been, in full life, exercising all the functions and franchises contemplated by its charter. After the corporation had become full fledged, I see nothing in reason or in principle why the stockholders might not as well elect directors as the directors a treasurer on the Missouri side of the line. The utmost that could be said under such circumstances is that the election was irregular.

The corporation having been once put into existence, if

the members of the board of directors—whether charter members, or. their appointees, or those elected by the stockholders in St. Louis—accepted their offices and acted under their appointment or election, as the evidence shows was the case, they became directors *de facto*, and their authority to act in behalf of the corporation could not be questioned by the appellant in this, a collateral suit, without showing a judgment of ouster against them in a direct proceeding by the government for that purpose. (Trust. of Vernon Soc. v. Hills, 6 Cow. 23 ; All Saints Ch. v. Lovett, 1 Hall, N. Y., 198–9 ; John et al. v. Farm. & Mech. Bk. of Ind., 2 Blackf. 367 ; Ang. & Ames on Corp., 3d ed., 104–5.)

I find no error in the record. Let the judgment be affirmed.

Judge Bay concurs. Judge Bates dissents.

Judge BATES. I hold that the election of directors by the corporators in the city of St. Louis (outside of the State of Illinois) was an absolute nullity. (Ang. & Ames on Corp., § 498.) The defendant's contract with the plaintiff was that he would pay "in such manner and proportions and times as shall be determined by said company in pursuance of the charter thereof and of the preceding resolutions of the board of directors."

The charter vested the corporate powers of the company in the board of directors. The resolution of the board of directors which preceded the subscription of stock provided that the calls for payments on the subscriptions should be made by the board.

The persons who made the last call were not directors, the pretended election of them being an absolute nullity. There is nothing in the whole case which tends to show that the defendant in any manner, at any time or place, ever recognized them as directors. He recognized the existence of the corporation, and is estopped from denying it; but he did not recognize those persons as directors, and the acts of other persons without his consent cannot bind him.

If I promise to pay money upon the demand of A, I deny that I am bound to pay it upon the demand of B, who falsely claims to be the attorney of A, although B may have acted as such attorney *de facto* in a great many instances, and may have been recognized as such attorney by a great many very respectable people.