HOLMES, BOOTH & HAYDENS, Appellant, *v.* SAMUEL H. WILLARD, Respondent.

*It seems* that directors and officers of a corporation are its agents, and are liable for their unauthorized transactions to their principal the same as the agent of an individual.

A corporation may foster its legitimate business by all usual and appropriate means, but may not, under the pretense of doing this, engage in transactions entirely *ultra vires*, and, *it seems*, when its directors and officers engage in such transactions and thus cause damage to the corporation, they may be jointly and severally held liable for such damage, and when an action is brought against a subordinate officer to enforce such liability, he cannot establish an absolute defense by showing that his transactions were assented to, or even directed by the directors.

Where, however, the officers engage in an *ultra vires* business for the benefit of the corporation, and it receives the actual benefit thereof, and said business is so carried on with the acquiescence of the stockholders that it actually, although illegally, becomes the business of the corporation, it cannot maintain an action against such officers for any damages it has suffered in such business.

So, also, an action by a corporation against its officers to recover damages caused by their mere error of judgment in a business actually carried on by it, although *ultra vires*, is not maintainable.

*It seems,* that a corporation dealing in manufactured goods, and needing them for sale, may, as a proper incident to its business, extend financial aid to a manufacturer by advancing him money to enable him to furnish the goods.

This may be done by a loan of its own money, or by indorsing the manufacturer's note, looking for reimbursement out of the goods to be manufactured and delivered.

Defendant was the treasurer and general manager of plaintiff, a Connecticut corporation, authorized by its charter to manufacture and deal in certain kinds of metal goods. Its directors took no part in the management of its affairs, but intrusted it entirely to the defendant. The latter executed in plaintiff's name, but without any previous action on the part of its directors, a contract with a corporation engaged in manufacturing carbons for electric lighting purposes, by the terms of which plaintiff was to receive and sell, for the period of five years, all the carbons manufactured by said corporation. Under said contract plaintiff received and sold the carbons with profit to itself for more than a year; the business was extensive, open and public. In order to increase the facilities of said corporation to manufacture the carbons so as to supply the orders therefor, it made its promissory note payable to

Statement of case.

plaintiff's order, which defendant, as treasurer, indorsed in plaintiff's name, and procured to be discounted, remitting the avails to said corporation. This note plaintiff was compelled to pay. In an action to recover of defendant the damages sustained, on the ground that defendant acted without authority, *held*, that while the dealing in the carbons was *ultra vires*, it was to be assumed, in the absence of proof to the contrary, that all the directors and stockholders had so far acquiesced that the business became that of plaintiff; that defendant, while engaged therein, was in its employment, and, as general manager, he had the same authority and discretion in reference thereto that he had in its legitimate business; and, therefore, that he was not liable.

(Argued October 30, 1890; decided December 2, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 13, 1889, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial without a jury.

This action was brought against the treasurer of plaintiff, a Connecticut corporation, to recover damages arising from an accommodation indorsement by him in plaintiff's name of a promissory note.

The facts, so far as material, are stated in the opinion.

*William H. Harris* for appellant. The indorsement of plaintiff's name upon the note was *ultra vires*, and was binding upon it only in the hands of innocent holders for value. (*Ellis* v. *H. M. Co.*, 9 Daly, 83; *R. & S. R. R. Co.* v. *Davis*, 43 N. Y. 137; *Moss* v. *Averill*, 10 id. 449; *P. Co.* v. *S. L. A., etc., R. R. Co.*, 118 U. S. 315, 317; *M. P. R. Co.* v. *W. Co.*, 7 Wis. 59; *Smead* v. *I. R. R. Co.*, 11 Ind. 104; *N. P. Bank* v. *G. A. M., W. & S. Co.*, 116 N. Y. 281; *Bissell* v. *M. S. R. R. Co.*, 22 id. 258; *Woodruff* v. *E. R. Co.*, 93 id. 609; *W. A. Co.* v. *Barlow*, 63 id. 62; *C. Bank* v. *E. S. D. Co.*, 26 Barb. 23; *Bank of Genesee* v. *P. Bank*, 13 N. Y. 309–315; *B. C. Bank* v. *E. S. D. Co.*, 30 Barb. 421; *Morford* v. *F. Bank*, 26 id. 568; *Webster* v. *H. M. Co.*, 54 Conn. 411, 412.) Defendant is liable to plaintiff for the damages arising from his indorsement of the note in suit. (Angell &

Ames on Corp. [11th ed.] § 315; *Austin* v. *Daniels*, 4 Den. 299; *Hun* v. *Cary*, 82 N. Y. 65; *Laverty* v. *Swethen*, 68 id. 522; *Landers* v. *F. S. M. E. Church*, 97 id. 119, 124; *Beveridge* v. *N. Y. E. R. Co.*, 112 id. 23; *Stringham* v. *S. N. F. Ins. Co.*, 4 Abb. Ct. App. Dec. 315; *N. Bank* v. *N. P. Co.*, 56 Hun, 139; *Wyman* v. *H. & A. Bank*, 14 Mass. 58; *Wardell* v. *U. P. R. R. Co.*, 103 N. Y. 651; *M. E. R. Co.* v. *M. R. Co.*, 14 Abb. [N. C.] 272; *Leslie* v. *Lorillard*, 110 N. Y. 530; *Rudd* v. *Robinson*, 54 Hun, 339.) The liability of the plaintiff on the note was fixed by its discount in plaintiff's bank. (*M. Bank Association* v. *N. Y. & S. W. L. Co.*, 35 N. Y. 505; *Olcott* v. *T. R. R. Co.*, 27 id. 546; *Bank of N. Y.* v. *M. B. Bank*, 29 id. 619; *M. E. R. Co.* v. *Kneeland*, 120 id. 134.) Plaintiff has not ratified the act of defendant, and is not estopped to deny defendant's lack of authority to indorse for accommodation. (*Wyman* v. *H. & A. Bank*, 14 Mass. 58; *C. C. Co.* v. *Sherman*, 30 Barb. 578; *Adair* v. *Brienmer*, 74 N. Y. 554; *Ormsby* v. *V. C. M. Co.*, 56 id. 623; *N. Bank* v. *N. P. Co.*, 56 Hun, 136; *Kent* v. *Q. M. Co.*, 78 N. Y. 187; *S. H. B. Co.* v. *E. H. B. M. Co.*, 90 id. 607; *Martin* v. *N. F. P. M. Co.*, 44 Hun, 190; *B. C. T. R. R. Co.* v. *Strong*, 75 N. Y. 591; Story on Agency, § 217; *Greaves* v. *Gonge*, 69 N. Y. 154.)

*Marshall B. Stafford* for respondent. The indorsement was not for accommodation, but for appellant's benefit in business. (*Arnot* v. *E. R. Co.*, 5 Hun, 610; *Smead* v. *I. & G. R. Co.*, 11 Ind. 104; *Low* v. *C. & P. R. Co.*, 52 Cal. 53; *Opdyke* v. *P. R. Co.*, 3 Dill. 55; Morawetz on Corp. [2d ed.] § 424.)

EARL, J. The plaintiff is a Connecticut corporation, authorized by its charter to exercise its corporate powers "for the purpose of manufacturing and dealing in all kinds of brass, copper and German silver goods, plated ware and metals composed wholly or in part of copper, brass or German silver, and all articles composed in whole or in part of metal which it

shall deem expedient, and to do such other things as are incident to the prosecution of said business, and to exercise such mercantile powers as may be convenient and necessary for the successful prosecution of said business," and there was no other description of or limitation on the business in which it could engage. Its directors were authorized to manage its affairs, and its stockholders could at any legal meeting make, alter or repeal the by-laws which it was authorized to have for the management of its business. On the 7th day of July, 1886, and for some years prior thereto, the defendant was the treasurer and general manager of the corporation. The directors took no part in the management of its affairs, and habitually held no meetings, except annual meetings, and they entrusted the entire management to the defendant, permitting him to use his uncontrolled discretion in and about the corporate business. On the 1st day of May, 1885, and until some time after July, 1886, the Forest City Carbon Manufacturing Company was an Ohio corporation, located and doing business at Cleveland, and it was engaged in manufacturing carbons for electric lighting purposes. At the former date the plaintiff entered into a written contract with that corporation by which during five years it was to receive and sell at prices stipulated all the carbons manufactured by the carbon company, and the latter company was not to sell any of the carbons manufactured by it to any other party : and the plaintiff was not to deal in any other carbons, and was to use all its facilities to introduce and extend the sale of such carbons. That contract was executed on behalf of the plaintiff by the defendant without, so far as appears, any previous action of its board of directors. The contract did not stipulate for any financial aid to be furnished by the plaintiff to the carbon company. Under that contract the plaintiff received and sold the carbons, and the dealings therein were profitable to it. The market for them was large and constantly increasing. The carbon company was not able to supply the demand for the carbons with the facilities which it then possessed. There was finally consultation between the president of the carbon

company and the defendant as to some method by which suffi-
cient carbons might be delivered to the plaintiff to supply its
orders for the same, and it was arranged that the plaintiff
should extend financial aid to the carbon company to enable it
to increase its plant and facilities for production.   In pursuance
of that arrangement and for that purpose only, on the 7th of
July, 1886, the carbon company made its promissory note to
the order of the plaintiff for $10,000, and the defendant, as
treasurer, indorsed thereon the name of the plaintiff and pro-
cured the note to be discounted, and took the proceeds and
remitted them to the carbon company to be used for the pur-
pose mentioned.   The plaintiff was ultimately compelled to
pay that note, and has not been able to collect any part thereof
from the carbon company.   The plaintiff claiming that the
defendant was unauthorized to indorse its name upon that
note and to send the proceeds thereof to the carbon company,
has brought this action against him to recover damages for his
unauthorized act.   There is no allegation, proof or claim of
any fraud or intended wrong on the part of the defendant,
and the plaintiff bases its claim to recover in this action solely
on the ground that the defendant acted without authority.

There can be no doubt that dealing in the carbons was *ultra
vires* of the plaintiff.   It was not incident to nor, so far as
appears, convenient or necessary for the successful prosecution
of its legitimate business.   It was, in fact, entirely foreign to
the business for which it was chartered.   It could not lawfully
engage in this foreign business simply because it could make a
profit therein.   A corporation may foster its legitimate busi-
ness by all the usual and appropriate means.   But it cannot,
under the pretense of fostering, engage in transactions entirely
*ultra vires*.

When the directors and officers of a corporation engage in
*ultra vires* transactions, and thus cause damage to the corpo-
ration, they may be jointly and severally liable for such dam-
age; and when sued for such damage, a subordinate officer
cannot establish an absolute defense by showing that his trans-
actions were assented to or even directed by the directors.

(*Austin* v. *Daniels*, 4 Denio, 299; *Hun* v. *Cary*, 82 N. Y. 65.) Directors and officers of corporations are agents of the corporation for which they act, and for their unauthorized transactions they may be liable to their principal just as the agent of an individual may be liable for the damage caused to his principal by his unauthorized acts.

But these general principles, sound in the abstract, may have some qualifications when applied to particular cases. This carbon business was extensive, open and public during more than a year, and the transactions therein were entered in the books of the corporation, and it and its stockholders had the benefit of the profits made therein. No one interested in the company, so far as appears, made any objection or protest to the business, or any attempt to arrest it. Indeed, upon the trial of the action, it seemed to be assumed by both parties that this business was carried on with the assent of the directors and stockholders of the corporation. There was no proof showing who, or how many, the stockholders were, and it does not appear that there were any besides the directors. There was no attempt to prove that any director or stockholder was ignorant of this business, and there was no finding, or request to find, that any stockholder did not have notice thereof. It was, therefore, the just inference from the evidence and competent for the trial judge to find that all the directors and stockholders had so far acquiesced in this business that it actually became the business of the corporation. (*Perkins* v. *P. S. & P. R. R. Co.*, 47 Me. 573; *Watt's Appeal*, 78 Pa. St. 370; *Thompson* v. *Lambert*, 44 Iowa, 239; *Tyrell* v. *C. & S. L. R. R. Co.*, 7 Mo. Ap. 294; *Kitchen* v. *S. L., K. C. & N. R. Co.*, 69 Mo. 224; *Gregory* v. *Patchett*, 33 Beavan, 595; *Riche* v. *A. R. C. & I. Co.*, L. R. [9 Ex.] 224; *Evans* v. *Smallcombe*, L. R. [3 Eng. & Ir. App.] 249.)

While the plaintiff did not have the right under its charter to carry on this business, it had capacity to do so and could make contracts therein which would bind it and the persons with whom it dealt, and its acts therein could be regarded as corporate acts. (*Bissell* v. *Michigan S. & N. I. R. R. Co.*,

22 N. Y. 258; *Whitney Arms Co.* v. *Barlow,* 63 id. 62.). The corporation was, therefore, in fact carrying on this busi-- ness, and the defendant, while engaged therein, was actually in. its employment working for it.    He owed the same care and diligence therein, and was under the same responsibility to the corporation as if the business had been legitimate.    And while the corporation was really carrying on the business, he, as gen-- eral manager, had the same authority and discretion in this illegitimate business as he had in the legitimate business.    The whole business of whatever nature of the corporation was in his hands and subject in its prosecution to his discretion.

If then the plaintiff had been organized to deal in carbons, and thus this had been a legitimate business, can it be doubted that it would have been lawful, under the circumstances dis-- closed, for it to extend financial aid to the carbon company? Clearly not.    That would have been a proper means to foster its business.    A corporation dealing in manufactured goods and needing them for sale, may, as a proper incident to its business, extend financial aid to a manufacturer by advancing him money to enable him to furnish the goods.    This aid may be extended by a loan of its own money, or it may take his notes and by its credit raise money thereon, and advance such money looking for reimbursement out of the goods to be manufactured and delivered to it.

When the officers of a corporation engage in an *ultra vires* business for the benefit of a corporation, and the corporation has the actual benefit thereof, and when the business is so carried on with the acquiescence of the stockholders that it actually, although illegally becomes the business of the corporation, it cannot maintain an action against such officers for any damages it has suffered in such business.    In other words, a corporation engaged in an *ultra vires* business cannot sue, for damages suffered therein, the agents it employs to carry on the business.    The agent of the corporation in such a case would be protected just as the agent of a copartnership would be protected who did business with the express or implied consent of the copartners which was not authorized

by the articles of copartnership. Upon the facts of the *Bissell* case could the copartners have maintained actions against their directors or other officers for the damages to which they were subjected by the *ultra vires* business? Clearly not. Can an action be maintained to recover damages for acts to which all the parties interested must be supposed to have assented?

While under certain circumstances a corporation cannot maintain against its officers an action for damages sustained in the *ultra vires* business actually carried on by them in good faith for it and with its assent, yet the stockholders may stand in a different relation. If the officers of a corporation carry it into a business not authorized by its charter and in no way assented to by the stockholders, and they are damaged thereby, they may undoubtedly sue the officers for their wrongful acts. Such an action the officers may defend by showing the stockholders' acquiescence in or assent to the business, express or implied. But an action by the corporation itself against its officers to recover damages caused by their mere error of judgment in a business actually carried on by it, although *ultra vires*, would be an anomally in the law, and is, we believe, without the warrant of any authority.

We have, therefore, reached the conclusion that the judgment is right and should be affirmed with costs.

All concur.

Judgment affirmed.