### GIFFORD v. CLAPP et al.

(Supreme Court, Appellate Division, First Department. November 10, 1899.)

1. LIFE INSURANCE—INSOLVENT ASSOCIATION—DIRECTORS—MISAPPLICATION OF FUNDS—POLICY HOLDER'S RIGHT TO SUE.

A policy holder in an insolvent life association is not entitled, unless the receiver has refused or neglected to bring the action, to sue its directors in behalf of himself and other policy holders, to compel them to make good their misapplication to the payment of its expenses, and of usual and expected death claims, of money belonging to its safety fund, to which, under its constitution, plaintiff and other policy holders were entitled as persistent members on its dissolution.

2. CORPORATIONS—DIRECTORS—MISAPPLICATION OF FUNDS—RECEIVER'S REFUSAL TO SUE.

Because the receiver of a corporation successfully opposed an application to the supreme court to direct him to sue or to authorize the use of his name in an action against the directors for a misapplication of its funds, it cannot be inferred that he has refused to sue therefor.

Appeal from special term, New York county.

Action by Crocker Gifford against Knight L. Clapp, impleaded with Francis V. S. Oliver, as receiver of the Family Fund Society, for the wrongful use by the defendant Oliver, as a director, of the funds

of the society. From an interlocutory judgment overruling a demurrer to the complaint, defendant Clapp appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and O'BRIEN, JJ.

Francis Lawton, for appellant.

Raphael J. Moses, for respondent.

PATTERSON, J. The defendant Clapp appeals from an interlocutory judgment overruling his demurrer to the complaint. Several grounds are stated in the demurrer, but we are required to consider only one of them, and that is "that the plaintiff has not legal capacity to sue." The specification of this ground of demurrer is stated as follows, viz.:

"Because the action is not brought by the attorney general of the state of New York in behalf of the people of the state, nor by a judgment creditor of the Family Fund Society, nor by a trustee, director, manager, or other officer of said Family Fund Society having a general superintendence of its concerns, nor by the said Family Fund Society, nor by its duly-appointed receiver; and the action is one which can be brought only by a person acting in one of the above capacities."

The plaintiff was a policy holder in the Family Fund Society, and in his complaint he sets forth the incorporation of that society as a co-operative and assessment life insurance association doing business at the city of New York from February, 1884, to October, 1891. That the attorney general of the state brought an action against the society to procure its dissolution, and a distribution of its assets among its creditors, and that an injunction was issued against the corporation and its trustees, directors, managers, and other officers enjoining them from exercising any of the corporate franchises, powers, rights, or privileges of the society, and from collecting and receiving any of the debts belonging to or held in any manner by the defendant, and from paying out any of its moneys, or interfering with or transferring to any person any of its securities, property, or effects. That subsequently, and in October, 1891, the Family Fund Society was dissolved, and a receiver was appointed, who duly qualified, and entered upon the performance of his duties. That in January, 1885, the plaintiff became a policy holder in the Family Fund Society by virtue of a contract entered into between him and such society, by which he was constituted a member thereof. That between the 22d of January, 1885, and the date of the injunction above mentioned, the society made certain mortuary calls upon him, pursuant to which he paid a certain sum of money,—a portion thereof prior to the 1st of December, 1886, and the balance thereafter. That in January, 1885, the constitution of the Family Fund Society required by its ninth article that 20 per cent. of the net death assessments or mortuary calls, such as were paid by the plaintiff, should be deposited in a trust company as a reserve fund, to meet any contingency that might arise by reason of extra mortality or otherwise, but no part of such reserve fund shall be used for the payment of expenses; and that such reserve fund should be for the exclusive benefit of the members of the society, and might be returned to the persistent members accord

ing to the terms and conditions of the bond or certificate of membership. That in November, 1886, the ninth article of the constitution was amended so as to read as follows:

"Article 9. Safety Fund. Twenty per cent. of the net amount realized on each quarterly or other death assessment or mortuary call received from members in what is termed the 'General Department' shall be deposited to the credit of the society in a bank or trust company designated by the board of directors, or invested and reinvested by the treasurer, subject to the direction and approval of the board or of the executive committee, as a permanent safety fund. The said safety fund may be used by the board of directors in their discretion to make any deposit required or allowed by the laws or usages of this or any other state or foreign country, or to equalize quarterly or other assessment or mortuary calls, or to meet any want or necessity of the society that may hereafter arise by reason of unusual mortality. The net amount of principal added to the safety fund in each calendar year not used for extra mortality shall, in the eleventh calendar year thereafter, be used to decrease the number or amount of quarterly or other assessments of such persons as shall have been members of the society for a period of ten consecutive years, in such mode, manner, and form as the board of directors may decide to be equitable and expedient for the best interests of the society. Such safety fund shall not otherwise be used for the payment of the expenses of the society. * * * All moneys belonging to the mortuary fund or the safety fund shall be kept invested and reinvested in sound securities at the highest rate of interest obtainable thereon consistent with safety, except such amounts thereof as may be required to be on deposit in cash to meet maturing claims thereon. The said two funds shall be kept entirely separate and distinct from each other. Any balance which may be on hand to the credit of the reserve fund after providing for contingencies by reason of extra mortality or otherwise shall be, and the same is hereby, transferred to the safety fund, and shall become a portion thereof, reserving, however, all existing rights, if any, therein."

The complaint then proceeds to charge that under the constitution in force prior to December, 1886, there was collected, and credited to the reserve fund, from the plaintiff and other policy holders, a certain sum of money, which was invested in certain bonds of the United States of America, and deposited with the superintendent of insurance of the state of New York, under legislative authority; that of the reserve fund there remained a balance, which, on the 3d of May, 1887, was transferred to the safety fund, and that the society collected from mortuary calls between December, 1886, and the 31st day of January, 1891, the sum of $48,450, and held it to the credit of the safety fund, and subject to the special trust imposed by article 9 of the constitution, above referred to. The complaint then states that on June 21, 1887, the defendant Clapp became a director of the Family Fund Society, and continued to be such until the action was brought for its dissolution; that while such a director he was present and constituted one of the quorum of directors who, at various times, and in violation of the provisions of article 9 of the society's constitution, passed resolutions transferring to the mortuary fund from the safety fund various sums of money; and it is alleged that such transfers were made with the intent and for the purpose of having the money thus transferred used in payment of the expenses of the society and of usual and expected death claims generally, and it is also alleged that such moneys were in fact used for the purposes declared, and contrary

to the terms and requirements of the constitution. The complaint then sets forth that the action is brought on behalf of the plaintiff and others similarly situated, whose policies were in force on the 31st of January, 1891; that prior' to the commencement of this action an application was made to the court in the action brought for the dissolution of the society, for an order appointing a referee to inquire into the solvency and liability of parties acting as directors of the Family Fund Society present at any meeting at which any portion of the safety fund was diverted or misapplied, and to take testimony, and report what, if any, action should be brought by the receiver to recover moneys so paid out or unlawfully transferred; and, in the event that the referee should report that no such action should·be brought, that he then report what sum would protect the fund for allowing the use of the receiver's name to the petitioners, or such one or more of them as might elect to use the receiver's name, and institute suit against the said several parties, and upon what terms and conditions such suit should be allowed to be instituted; that the application to have the receiver bring an action in the receiver's name was opposed by the receiver, and denied; that, after this action was brought, the receiver, by leave of the court, was made a party. The plaintiff then prayed for the relief that a special trustee or receiver be appointed in this action, and that the defendant Clapp be required to pay to him the sum of $48,000, with interest on the several amounts constituting said sum from the dates that the same were severally transferred from the mortuary fund to the safety fund, and that there be paid to the plaintiff and others similarly situated the costs and charges of this action, and that the residue of the amount be distributed pro rata between the plaintiff and the other persistent members of the Family Fund Society whose policies were in force on the 31st of January, 1891.

The foregoing being the averments of the complaint, it appears from the structure of the action that what is sought to be accomplished thereby is the recovery from Mr. Clapp of moneys which, through or by reason of his acts, have been diverted from a specific purpose to which they were appropriated, and should have been exclusively devoted, and for which they should have been held, and in respect of which the plaintiff had a beneficial interest, and the payment of such moneys to a special receiver, and the ultimate distribution of them to the plaintiff and others situated as he is with respect to such fund. The demurring defendant takes the position that a right of action for the recovery of those moneys, if any exists, resides in the receiver appointed in the dissolution suit, and not in the plaintiff or other policy holders. The learned judge below, in overruling the demurrer, has proceeded upon the theory that the safety fund was not the property of the Family Fund Society, that the right of action against the defendant as a tort feasor was not in the corporation, and did not pass to the receiver; and that this safety fund was not at any time assets of the society, but was received and held by it as in trust for the benefit of the persistent members, of whom the plaintiff was one; and that, if the

defendant should be compelled to make good the misapplied fund, it could not be distributed among the general creditors of the society. We are of the opinion that the learned judge was in error in overruling the demurrer, and that whatever cause of action exists against Mr. Clapp and other directors who voted for the misapplication of this safety fund inheres in the receiver, unless he has refused or neglected to bring an action under such circumstances as would entitle the plaintiff and other ultimate beneficiaries to bring a suit in equity to compel the restoration of the fund. It appears to have been held by the court below that the right of action was not in the receiver, because of an expression used by the court of appeals in Re Equitable Reserve Fund Life Ass'n, 131 N. Y. 354, 30 N. E. 114. In that case, speaking of a reserve fund of a corporation organized as a co-operative or assessment life insurance society, the court said that "the fund is not assets of the company, within the general meaning of that term. It is more in the nature of a trust fund." That is undoubtedly a correct statement of the nature of that fund, but what was meant by the expression used is that the fund was not assets for general distribution, as appears from another sentence in the opinion of the court, namely: "When the company was dissolved, the reserve fund was not left to be disposed of under the rules to be applied by law to the distribution of assets of insolvent corporations, free from the provisions already spoken of." The safety fund in the case at bar was the property of the Family Fund Society. It was available to that society for a number of specific legitimate purposes, to which it could be applied by the directors. There was a limitation of use by the corporation which prohibited its employment in the manner in which it was used under the resolutions of the directors mentioned in the complaint. That interdicted use constituted a diversion of the funds, misfeasance on the part of the directors consenting to it,—wrongful acts for which they were directly liable to the corporation. That liability arose out of the relation existing between the corporation and its directors, which is that of principal and agent. What was said in the well-known case of Hun v. Cary, 82 N. Y. 79, covers the point:

"The trustees may be treated as agents of the bank (In re German Mining Co., 27 Eng. Law & Eq. 158; Belknap v. Davis, 19 Me. 455; Railroad Co. v. Bowser, 48 Pa. St. 29; Butts v. Wood, 38 Barb. 181; Austin v. Daniels, 4 Denio, 299; Railroad Co. v. McPherson, 35 Mo. 13); and for any misfeasance or nonfeasance causing damage to the bank they were responsible to it, upon the same principle that any agent is, for like cause, responsible to his principal. It has never been doubted that a principal may sue his agent in an action at law for any damages caused by culpable misfeasance or nonfeasance in the business of the agency."

The reserve fund was the property of the corporation. The legal title to that fund was in the corporation. The waste, misapplication, or spoliation of that fund by the directors made them responsible to the corporation, which could maintain an action at law against them, or either of them, for their tortious acts. When, in this case, the receiver was appointed in the dissolution proceedings, the title to the moneys in the safety fund belonged to him.

He was the appointed agent of the court to take into his possession and to administer all the property of the corporation, and in him were vested all causes of action existing against any persons liable by reason of the unlawful, fraudulent, or wrongful diversion of the fund. A receiver of an insolvent life insurance company is clothed with the right of enforcing a liability of its directors to make reparation for loss occasioned to the company by misapplication of its assets or of its property. Mason v. Henry, 152 N. Y. 535, 46 N. E. 837. He represents the corporation, and we do not see that his title to the fund, or his right to pursue the directors, is affected by the fact that the diverted money was used by them for paying claims which were due by the corporation to its policy holders or creditors. The gravamen of the action is the wrongful use of these funds for any purpose. They were bound to keep the fund for the same purposes to which it was to be applied under the terms of the constitution of the society.'. In ascertaining their liability, they cannot go behind the fact of the interdicted use. They were bound to the terms of the trust, and their liability is to make good the fund, so that it may be used or applied to the purposes of that trust in the administration of the receivership. The fruits of any recovery had by the receiver must necessarily be held by him, and applied in the manner required by the terms of the trust. If the receiver has refused to bring a suit when properly requested so to do, or has neglected his duty in that regard, the plaintiff and other beneficiaries would undoubtedly have the right to bring a suit in equity against Mr. Clapp and others responsible for the diversion of the trust fund. Mason v. Henry, supra. It is argued by the respondent that such is the situation in this case, but the averment of the complaint does not sustain the contention. All that appears is that an application was made to the supreme court, which, in its broadest significance, may be considered as one to direct the receiver to sue, or to authorize the use of his name in an action against Mr. Clapp and others, and that the receiver opposed the motion, and it was denied. The presumption is that the denial was for some good and sufficient reason satisfactory to the court. The receiver cannot, therefore, be regarded as in default, or as having refused to bring an action, and thus the plaintiff has not put himself in a position to maintain a suit in equity.

We are of the opinion that the interlocutory judgment should be reversed, and the demurrer sustained, with costs in this court and in the court below, but with leave to the plaintiff on payment of such costs to amend his complaint, if he be so advised, by inserting such allegations as would entitle him to maintain the action, instead of the receiver. All concur.