DETERMINED IN THE

# FIRST DEPARTMENT

IN THE

## APPELLATE DIVISION,

### February, 1898.*

---

H. KOEHLER & Co., Appellant, *v.* ISAAC REINHEIMER, Respondent.

*Corporation — guaranty of a lease, executed by a brewing company in consideration of the lessee's promise to buy beer from the company — the plea of* ultra vires *cannot be asserted — sealed instrument expressing a consideration.*

A guaranty of the performance by the lessee of premises to be used as a saloon, of the conditions and covenants contained in the lease, executed by a corporation organized under the General Manufacturing Act (Laws of 1848, chap. 40), for the manufacture of ales and beer, in consideration of the lessee's promise to buy his beer of the corporation, is not *ultra vires.*

When, moreover, it appears that the lessor delivered possession of the premises to the lessee, in reliance upon such guaranty, the corporation will not be permitted to advance the plea of *ultra vires.*

The fact that such a contract is under seal and expresses a consideration is sufficient to support it.

APPEAL by the plaintiff, H. Koehler & Co., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 20th day of April, 1897, upon the decision of the court rendered after a trial before the court without a jury at the New York Trial Term dismissing the complaint.

*E. J. Myers,* for the appellant.

*David Gerber,* for the respondent.

---

* The other cases of this term will be found in volume 25 App. Div.— [REP.

APP. DIV.— VOL. XXVI.    1

RUMSEY, J.:

The plaintiff is a corporation organized under the general law of 1848 (Chap. 40), and the objects for which it is organized are the manufacture and sale of various kinds of ales and beer. In the month of November, 1890, certain infants, the owners of a building in this city, were, by their special guardian, about to lease the premises to one Hyland to be used as a saloon for the sale of beer. The plaintiff corporation had agreed to guarantee the performance of the covenants of the lease by Hyland. Before that was done, however, the plaintiff entered into a contract with the defendant under his seal, which recited the fact that the lease was about to be made, describing it, and that Koehler & Co. were about to guarantee the performance of the conditions in the lease; and the defendant agreed that, if default should be made by the lessee in the performance of any of the covenants, and the said Koehler & Co. should be called upon to pay the rent or perform the conditions of the lease, he would pay to Koehler & Co. the rent or any arrears thereof that might remain due under the lease, and all damages that might arise in consequence of the non-performance of the covenants or either of them. The lessee defaulted in the payment of certain of the rent, and the lessor thereupon brought an action against Koehler & Co. to recover the amount not paid by the lessee. That action was settled by Koehler & Co. by the payment of a less amount than was actually due to the lessor, and in return for that payment it obtained a receipt in full for the amount unpaid and a release from further liability upon its guaranty. Having made that payment, Koehler & Co. brought this action to recover the amount it had paid and the expenses to which it had been put. At the Trial Term the complaint was dismissed, the court deciding that the contract of guaranty entered into by Koehler & Co. with the lessor was not within its power as a corporation to make; that, consequently, the contract could not have been enforced against it had it resisted, and that the defendant was only bound to indemnify the plaintiff against a legal liability which it could have been compelled to perform. The complaint was dismissed, therefore, upon the sole ground that the contract between the plaintiff here and the lessor, by which the plaintiff guaranteed the performance by the lessee of the covenants contained in the lease, was *ultra vires;* and, conse-

quently, the only question presented in this case is whether in that conclusion the court was correct. For the purposes of the case it will be conceded that the contract of the defendant was simply a contract of indemnity and not solely a guaranty, and that the defendant could not be compelled to answer to the plaintiff for the performance of any act which the plaintiff was not legally compellable itself to do. It will not be questioned either that if the plaintiff here had any defense to the action brought against it by the lessor, the defendant is entitled to have the benefit of that defense in this action to the same extent and with the same effect as though the defense had been interposed successfully by the plaintiff in the action against it. The only question, therefore, which will be considered, is whether the plaintiff here was liable upon its contract to guarantee the performance of the conditions of the lease. That question has been presented to the courts of this State several times within the last few years, and while the decisions upon the subject are contradictory, yet it may fairly be said that the weight of authority is to the effect that such a contract by a brewing company is not beyond its powers. (*Fuld* v. *The Burr Brew. Co.*, 18 N. Y. Supp. 456; *Holm* v. *The Claus Lipsius Brew. Co.*, 21 App. Div. 204.)

The case of *Filon* v. *The Miller Brewing Company* (15 N. Y. Supp. 57) has been cited as laying down a different rule. The question there was not presented in precisely the same way. In that case the secretary of the Miller Brewing Company had leased from Filon certain premises to be used by a third person. It appeared that the company did not take possession of the premises leased and did not make any effort to occupy them, but that it proposed to permit a third person to use them, and there was grave doubt in the case whether the secretary who executed the lease had any power to do so. The court held in that case that the proper execution of the lease had not been proved so as to charge the brewing company. It was also held by the justice delivering the opinion that if the secretary had power to execute the lease, the act was outside of the purposes for which the company was incorporated, and, therefore, it was *ultra vires*, and the defendant was not liable upon the lease. If that case could be deemed an authority that a corporation in guaranteeing a lease for the purpose of increas-

ing the sales of the article in which it deals, necessarily goes beyond its powers so that its contract of guaranty is void, it must be deemed to be overruled by the two cases cited above. • The same question was presented to the Supreme Court of Wisconsin in a very recent case where the facts were almost precisely as they are here, and it was held that a brewing company had the power to make such a guaranty and was liable upon it. (*Winterfield* v. *The Cream City Brew. Co.*, 71 N. W. Rep. 101.) But if, upon a consideration of the authorities, it shall be deemed that the question has not been settled in this State, and is still open for consideration, nevertheless we think that upon principle the plaintiff was clearly liable on the contract it made. Its business was the manufacture and sale of beer. Hyland was about to open a saloon in which beer should be sold. He had not before that time been a customer of the plaintiff, but he promised in case the plaintiff executed this guaranty that he would buy his beer of it, and the guaranty was executed for the purpose of securing a customer, and that was its object. The contract to guarantee this lease was not illegal in the sense that it was forbidden by the statute or that it was against public policy. It is *ultra vires*, if at all, simply because it does not relate to something within the purview of the objects for which the corporation was organized. A trading corporation like this has the right to foster its legitimate business by all usual and proper means, and it may make all contracts which are useful or necessary to enable it to carry on the business or accomplish the objects of its incorporation. (*Old Colony R. R. Corporation* v. *Evans*, 6 Gray, 25, 38.) It is said by Judge EARL in the case of *Holmes* v. *Willard* (125 N. Y. 75, 81) that a corporation dealing in manufactured goods and needing them for sale, may, as a proper incident to its business, extend financial aid to a manufacturer by advancing him money to enable him to furnish the goods. The doctrine of *ultra vires* took its rise at a very early day in the history of corporations, at a time when they were not common and were created for *quasi* public purposes and regarded to a certain extent as public in their nature. At that time not only was their manner of contracting closely limited, but their power to make contracts was jealously guarded and the courts were not slow to invalidate any act by which a corporation might go beyond the express powers which had been

granted to it. But that doctrine has been considerably limited in later days. Corporations are now organized to carry on every kind of business which may be performed by individuals. The purposes of trading corporations are in no way public in their nature. So far as the people are concerned, whether a corporation shall make one contract or another, so long as it advances the purposes for which the corporation was organized, is absolutely unimportant; and so the rule has come to be laid down that, except as restrained by law, trading corporations have the implied power to make all such contracts as will further the objects of their creation, and their dealings in this regard may be likened to those of an individual seeking to accomplish the same ends. (4 Am. & Eng. Ency. of Law, 245; 1 Morawetz Corp. § 320; Green's Brice's Ultra Vires, 72.)

In examining the question whether a contract of a trading corporation is beyond its powers, it is not very important whether the contract was a sagacious one to make or not. If it appears that the thing done tended to increase the business it was organized to do, the courts need not concern themselves with the question whether the contract was a wise one. The simple question is, if the contract were carried out, whether it would have been likely to increase the business of the corporation. In this case, as the contract appears to have been made with the purpose of obtaining a customer for the plaintiff's beer, the only thing to be examined is whether, if the arrangement had been carried out as expected at the time the contract of guaranty was entered into, it would have tended to increase the sales of the commodity in which the plaintiff dealt. The arrangement with Hyland may not have reached the dignity of an enforcible contract, but yet it may well have resulted in a great increase of the plaintiff's business, and if so, it was undoubtedly a reasonable contract for it to make. The purpose of the plaintiff's organization was to make and sell beer. It was undoubtedly competent to enter into any contract adapted to further that purpose and not against public policy. No one would hesitate to say that the plaintiff might have rented a place in which to dispose of its wares, and established an agent there for that purpose. Can it be said, *as a matter of law*, that it was foreign to the purposes of its organization to enter into a contract with a person who was engaged

in the sale of that sort of wares by which it should be made worth his while to deal exclusively in the plaintiff's wares? Clearly it could not, and if the arrangement operated successfully it was quite certain that the business of the plaintiff would be increased. It may be said that there was nothing to show that the contract was one which was customary to be made in the business, but that is of no importance. The question is whether, upon a consideration of all the facts, it appears that the contract was one which could have fostered the purposes for which the corporation was organized. If it might, then it was within the power of the corporation to make it, otherwise not. That question, as it seems to us, must clearly be answered in the affirmative in this case.

An examination of the record shows that the persons entering into this lease were infants; that an application had been made to the court by their special guardian to authorize the lease of these premises; that the special guardian reported to the court the terms upon which the lease was to be made and that one of those terms was that the lease was to be guaranteed by the plaintiff. That report was accompanied by a memorandum of an agreement by which the lessee undertook to procure such a guaranty, and the order of confirmation authorizing the execution of the lease required that, in addition to the usual covenants, it should contain certain other conditions, one of which was that the lessee should procure H. Koehler & Co. to guarantee in the usual form the performance of the covenants and conditions contained in the lease. It is apparent from these facts that this guaranty given by the plaintiff was a condition upon which the lessor was permitted to enter into the lease, and that the lease was executed upon the express authority of that guaranty. It was, therefore, so far as the plaintiff was concerned, an executed contract by which, in reliance upon the act of the plaintiff, the lessor had delivered over the possession of this property under the lease to the lessee. That state of facts brings the case precisely within the case of *Whitney Arms Co.* v. *Barlow* (63 N. Y. 62), in which it was said that a corporation will not be permitted to advance the plea of *ultra vires* where the contract with regard to which it is interposed was one entered into in reliance upon the act of the corporation. (See, also, *Bath Gas Light Co.* v. *Claffy*, 151 N. Y. 24.) It may be said that the liability imposed

upon this plaintiff by this contract of guaranty was greatly in excess of any possible benefits that could accrue; but nothing of that sort appears, nor would it be of any importance if it did. Neither the directors nor the stockholders of the plaintiff seem to have made any objections to the contract, and the validity of such a contract does not depend upon the question whether it was a wise one to make, but upon whether the object of it was to increase the business of the company, and whether, upon the whole, it was possible that that object could have been attained.

It is said that there was no consideration moving to Reinheimer for his contract of indemnity. Upon that point it need only be remarked that his contract was under seal and expressed a consideration, and that was amply sufficient to support it.

We do not consider whether Reinheimer was induced to enter into this contract by false representations. While evidence was given upon both sides in regard to that matter, the court did not pass upon it, but put its decision solely upon the ground that the contract was one which the plaintiff had no power to make. Our judgment is that, upon the facts appearing here, this contract of guaranty was one within the power of the plaintiff to enter into; that it could have no defense to the action brought against it by the lessor, and, therefore, it was entitled to be indemnified against the liability which it incurred, and should have recovered from the defendant the amount it lost.

The judgment, therefore, should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., BARRETT, INGRAHAM and MCLAUGHLIN, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.