(33 Misc. Rep. 200.)

### VIRGIL v. VIRGIL PRACTICE CLAVIER CO.

(Supreme Court, Special Term, New York County. November, 1900.)

CORPORATIONS—ULTRA VIRES—ADVERTISING GOODS.

    A corporation organized for the manufacture and sale of instruments designed for practice and instruction in piano playing is not acting ultra. vires in maintaining a piano school for the purpose of advertising an invention for teaching the piano, owned by the corporation.

Suit by Antha M. Virgil against the Virgil Practice Clavier Company. Judgment in favor of defendant.

Gifford, Stearns & Hobbs, for plaintiff.
E. S. Peck, for defendant.

LEVENTRITT, J. The plaintiff, a stockholder in the defendant corporation, seeks to restrain it from maintaining a piano school in connection with its business on the ground that it is ultra vires. The defendant is a manufacturing corporation organized under the general law of 1848 (chapter 40) for "the manufacture and sale of instruments designed for practice and instruction in the art of playing the piano and other instruments having a similar keyboard, and of any instrument, appliance, or thing which may be used for such practice and instruction, whether independently or in connection

with musical instruments or with instruments designed for practice only." Under this charter provision the defendant has manufactured and sold what is known as the "Virgil Practice Clavier,"—an instrument designed for the better teaching of piano playing. It consists ordinarily of the usual seven-octave piano keyboard, but the keys themselves are toneless, except for two sets of clicks; one sounding as the key is struck, the other as it is released. It is also provided with a mechanical contrivance by which the pressure on the keys— that is, the resistance they offer to the muscular energies of the fingers—may be regulated. It is undisputed that the clavier is an invaluable adjunct in assisting the pianist in acquiring proficiency of technique. The parties are not in agreement as to the value of the invention in facilitating instruction in the higher branches of harmony, counterpoint, and musical form, and it must be admitted that the evidence does not remove natural doubts in the lay mind as to the efficacy of the clavier in that direction. The defendants, however, claim to have a piano system more intellectual and analytical than other systems of piano teaching, that an understanding of the science of harmony, counterpoint, and musical form is essential for the proper teaching and propagation of that system, and that the clavier itself is an indispensable part of that instruction. It may be conceded as proved in this case that the clavier is essential primarily in the teaching of the mechanical side of the technique of piano playing, as distinct from the so-called technique of emotion or expression, and that the claims made for it, as aiding the instruction on such points as accent, rhythm, staccato, and legato touch, proper tonal and time values, memorizing, the use of all the members in playing,—fingers, wrists, arms, muscles, nerves,—have been substantiated to the extent of showing that the clavier can accomplish those results. And, though its efficacy in the other directions is not so apparent, the claim cannot be disregarded in determining whether the establishment of the music school was ultra vires, inasmuch as the real test here is not so much whether the clavier can accomplish all that is claimed for it as it is whether the defendants honestly had reason to believe that it could. It appears that the invention owned by the defendant corporation was new and novel, and that obstacles were encountered in its introduction primarily in the form of the prejudice existing in the minds of teachers and students against the use of a toneless instrument. In order to overcome this prejudice, and to bring the invention to public notice, the company sought to create a market for its wares by teaching, lecturing, and advertising, and, as part of its general scheme, established the school, the continuance of which the plaintiff now seeks to enjoin. Its prospectus declares the study of the piano to be the specialty, but also offers courses in organ, theory, harmony, musical history, art of mental and physical control, and cognate subjects. It appears that the plaintiff has likewise maintained a piano school, where instruction on the clavier has been given, that it has promoted the sale of the clavier, and that since the establishment of the defendant's school there has been a slight increase over the previous year in the average monthly sales of instruments in this country. On all the facts presented, I do

not think that a case of ultra vires has been established. Transactions beyond the corporate powers, as defined by the charter, are ultra vires and void. Tayl. Priv. Corp. § 265; Green's Brice, Ultra Vires, 41; 27 Am. & Eng. Enc. Law, 355. But what is incidental to the purpose for which a corporation is created is not prohibited. Mor. Priv. Corp. § 320. The range of incidental powers has been steadily enlarged under the growing exigencies of complicated modern commercial relations. It has been pointed out that the doctrine of ultra vires originated at a time when nearly all corporations were created for public purposes, and that there is slight reason why it should ever have been applied to private corporations more than to individuals in a co-partnership. Holm v. Brewing Co., 21 App. Div. 204, 47 N. Y. Supp. 518; 5 Thomp. Corp. § 5971. The modern rule has been recently well stated by Mr. Justice Beekman thus:

"If [the] act is one which is lawful in itself, and not otherwise prohibited, is done for the purpose of serving corporate ends, is reasonably tributary to the promotion of those ends in a substantial, and not in a remote or fanciful, sense, it may fairly be considered within charter powers." Steinway v. Steinway & Sons, 17 Misc. Rep. 47, 40 N. Y. Supp. 718.

A very broad statement of the rule has recently been made in H. Koehler & Co. v. Reinheimer, 26 App. Div. 1, 49 N. Y. Supp. 755, where it is said:

"So far as the people are concerned, whether a corporation shall make one contract or another, so long as it advances the purposes for which the corporation was organized, is absolutely unimportant; and so the rule has come to be laid down that, except as restrained by law, trading corporations have the implied power to make all such contracts as will further the objects of their creation, and their dealings in this regard may be likened to those of an individual seeking to accomplish the same ends." At page 5, 26 App. Div., and page 758, 49 N. Y. Supp.

Applying these liberal principles, I am of the opinion that the maintenance of the school is not an ultra vires act. The defendant company was organized for the manufacture and sale of a certain novel instrument. The school was established to promote the sale, to increase the business of the corporation. Its foundation and continuance are neither against public policy nor otherwise illegal, and stand in reasonably direct relation to the corporate objects announced in the charter. The clavier is intended to take its place in the curriculum of piano teaching for the beginner as well as the advanced student, and value is claimed for it even in the case of the finished virtuoso. Instruction is required to place its merits properly before the two former, and some demonstration in the case of the latter. In so far as the use of the clavier is an integral part of a method of general music instruction, the defendant company was justified in doing such legal acts as would, in its opinion, further the sale, introduction, and application of the clavier as part of that method. It is in this aspect that the other branches taught in its school do not become "remote and fanciful" in relation to expressed corporate purpose. With the merits of the invention as such we have nothing to do; nor whether the establishment of the school was a sagacious act of business policy. H. Koehler & Co. v. Reinheimer, supra. The single question here is this: Whether the defendant

68 N.Y.S.—22

corporation, acting under a charter for the manufacture and sale of a certain invention, has the right to maintain a school for the more effective distribution of its product, and for the completer dissemination of the merits claimed for it. The answer, I think, must be in the affirmative.

Judgment for the defendant, without costs.