FLINT & WALLING MANUFACTURING COMPANY v. KERR-MURRAY MANUFACTURING COMPANY.

[No. 3,054. Filed March 27, 1900.]

CORPORATIONS.—*Guaranty.*—*Ultra Vires.*—Where defendant manufacturing corporation guaranteed the performance of a contract whereby plaintiff engaged to do certain work for a third person, and defendant gained a pecuniary benefit from the performance of the contract at the expense of plaintiff, defendant cannot avoid the guaranty on the ground of *ultra vires.*

From the Allen Circuit Court. *Reversed.*

*A. Zollars, C. H. Worden, F. E. Zollars, A. A. Chapin* and *W. P. Denny,* for appellant.

*J. M. Barrett* and *S. L. Morris,* for appellee.

Flint & Walling Mfg. Co. *v.* Kerr-Murray Mfg. Co.

BLACK, J.—The appellant sued the appellee to recover for work done by the former for the Summit City Manufacturing Company, as it required, pursuant to a written proposition and guaranty of payment as follows: "July 12, 1897. The Flint Walling Mfg. Company, Kendallville, Indiana.—Gentlemen: Mr Houser, of the Summit City Manufacturing Company, informs us that you are doing some work for him on his vegetable grinders, and requests that we write you guaranteeing the payment of the work. This we are willing to do, provided you notify us promptly the amount due on each shipment, and trust you will give the same your prompt attention. Please let us hear from you promptly. Also, state how soon you will make shipment of these castings. Yours truly, Kerr-Murray Mfg. Company, By A. D. Cressler, Pres." The bill of particulars filed with the complaint was an account of the appellant against said Summit City Manufacturing Company, amounting to $74.76.

In the appellee's answer, a demurrer to which was overruled, it was alleged, in substance, that the appellee was, and since the 26th of January, 1881, had been, a manufacturing corporation, duly organized under the laws of this State relating to manufacturing corporations, "and was incorporated for the purpose of carrying on the business of a machine shop, foundry, and boiler shop, for manufacturing and selling articles of iron and other metals and wooden or other articles connected therewith, and more particularly, making and selling gas-works machinery, apparatus, steam-elevator and material machinery"; that said Summit City Manufacturing Company was a manufacturing company, organized under the laws of this State, for the purpose of making soap; that said written guaranty was executed in the name of said Kerr-Murray Manufacturing Company by A. D. Cressler, its president, without authority from the stockholders or the directors of said company; "and that said company has no power or authority to become

guarantor or surety for said Summit City Manufacturing Company; and that said written guaranty so executed in the name of this defendant by its president is *ultra vires,* and wholly void."

There was a reply in three paragraphs, each of which was held insufficient on demurrer. In the first paragraph it was, in substance, stated, that on the 30th of June, 1897, said Summit City Manufacturing Company was indebted to the appellee for materials furnished and labor performed; that for the purpose of providing means for payment of such indebtedness, and for future indebtedness of like character, said Summit City Manufacturing Company, at the appellee's request, made and delivered to it an order, as follows: "Fort Wayne, Indiana, June 30, 1897. Messrs. Langer & Lissner, City.—Gentlemen: From and after this date, as same may become due, pay to the Kerr-Murray Manufacturing Company fifty per cent. of moneys due or to become due us for labor and material furnished for vegetable cutter and grater machinery, and for other work and material to be furnished, to amount of $400, taking their receipt, and charge same to our account. Summit City Mfg. Company, D. E. Houser, Pres., M. M. Houser, Secy."

It was further shown, that when said order was so made, and delivered to the appellee, the Summit City Manufacturing Company was furnishing material and manufacturing the vegetable cutter and grater machines described therein, and contemplated the further manufacture of such machines for said Langer & Lissner and their associates, all of which was done and being done under a contract to furnish said machines in completed condition ready for use; that, in order to complete the said machines, it was necessary to galvanize them. It was also alleged that the appellee, for the purpose of having said machines completed ready for delivery to said Langer & Lissner and their associates, "and thus making said order available for payment

Flint & Walling Mfg. Co. v. Kerr-Murray Mfg. Co.

of the sum named therein, executed the guaranty sued on herein; that at the time of the execution of said written guaranty said A. D. Cressler, who executed the same for and on behalf of said defendant, was its president and general manager, and as such was fully authorized to transact all business for said defendant, to execute its obligations, and to carry out and perform its contracts; that, thereafter, plaintiff, relying upon said guaranty, performed said work of galvanizing said machines, furnishing also the material for the same, which services and material are the items of plaintiff's claim against said Summit City Manufacturing Company particularly mentioned in Exhibit B attached to plaintiff's complaint; that said machines were delivered to Langer & Lissner and their associates, and they paid to said defendant thereafter on said order a large sum, to wit, $300, and the defendant still holds said order against them. Wherefore plaintiff says that the defendant is estopped to plead the defense in said answer contained."

In the second paragraph of reply it was alleged that the Summit City Manufacturing Company, at and prior to the execution by the appellee of the guaranty sued on, fully indemnified the appellee for such undertaking and guaranty; and in the third paragraph it was alleged that since the execution of the guaranty the Summit City Manufacturing Company had indemnified the appellee for executing the guaranty.

In the answer it was sought to show that the president of the appellee had not authority to execute the guaranty, and also that the appellee had not power to bind itself by such contract. These are distinct defenses. Want of authority in the president as representative of the corporation is one thing, while want of power in the corporation to make the contract is another thing; the former involving a question of agency, the latter a question of corporate power. The matter contained in the answer respecting the authority of the

president was well enough met by what was said on the same subject in the first paragraph of reply.

The important question in the case is whether it appears from the complaint, answer, and first paragraph of reply that the contract of guaranty was not binding upon the appellee by reason of its being *ultra vires.* Upon this question the decisions of the courts and the conclusions of the text-writers are in irreconcilable conflict. The contract by which the appellee undertook to bind itself was not expressly prohibited, and it was not immoral. Upon the facts shown by the complaint and answer, however, without more, the contract was, *prima facie*, beyond the express or implied powers of the manufacturing corporation, and not binding upon the appellee. What effect should be given to the facts brought forward by the first paragraph of reply?

That it is within the power of one corporation to sell and guarantee the negotiable paper of another corporation held by the former corporation in the usual course of business is well settled. See *Madison, etc., R. Co. v. Norwich, etc., Soc.*, 24 Ind. 457.

In Thompson on Corp., §5721, it is said: "With the exception of those corporations, such as trust and guaranty companies, which are organized for the express purpose of becoming sureties for other persons or corporations, and with other exceptions elsewhere stated," (reference being made to section 5724), "it may be laid down as a general rule, that no corporation has the power, by any form of contract or indorsement, to become a guarantor or surety for, or otherwise to lend its credit to, another person or corporation." In §5724, the author refers to some decisions which he says "support the suggestion of Dr. Brice, that there may be cases, such as matters of management, and of arrangement with debtors, where such undertakings would be upheld."

In Brice on Ultra Vires (3rd Eng. ed.) 269, it is said that probably there are cases where—as matters of man-

agement, and of arrangements with creditors or debtors—such contracts of a corporation would be upheld.

In *Low* v. *California, etc., R. Co.*, 52 Cal. 53, 28 Am. R. 629, one of the cases cited by Dr. Brice, it was held to be lawful for one railroad corporation, lessee of another railroad corporation, to guarantee the bonds of the latter, pursuant to an arrangement involving the settlement of its indebtedness. It was said in the opinion of the court that there is no sufficient reason deducible from the character of such a corporation and the business in which it engages why it may not, for a sufficient consideration, guarantee a debt which it may directly contract to pay,—why the corporation may not, upon a sufficient consideration, make a conditional as well as an absolute promise of payment.

In *Ex parte Booker*, L. R. 14 Ch. Div. 317, another case cited by Dr. Brice, the directors of a bank having under the deed of settlement extensive powers to carry on the business of bankers, and to act in such manner as might appear to them best calculated to promote the interest of the bank, were held to have power to guarantee the payment of interest on debentures of another company issued for the purpose of forming it, the foundation of the other company being of importance to the bank as a means of securing an indebtedness to it. See, also, Cook on Corp. §§774, 775. "It also seems a reasonable conclusion that a trading, mining, or manufacturing corporation may extend financial aid to a customer whenever the exigencies of its own business make such a course expedient,—a rule, the necessity of which business men will readily understand." 4 Thompson on Corp. §5711, citing *Holmes* v. *Willard*, 125 N. Y. 75, 25 N. E. 1083, 11 L. R. A. 170.

Where, by its charter, a bank was limited to dealing in paper of a certain description, in the ordinary course of business, it was held that the restriction did not extend to any case where it might become necessary to secure the payment of a debt previously contracted, and which could

not be collected in the regular way. *Lagow* v. *Badollet*, 1 Blackf. 416, 12 Am. Dec. 258.

These authorities go far to uphold such a guaranty as the one involved in the case at bar as an act not beyond the power of the corporation, being a part of an arrangement whereby payment was secured of a particular indebtedness to the corporation which had arisen in the transaction of its business as a corporation.

In *State Board, etc.*, v. *Citizens Street R. Co.*, 47 Ind. 407, 17 Am. Rep. 702, a selected case in Field on Ultra Vires, 174, the street railway company, to induce the state board to locate and hold its annual fair at a certain place, where, by making a short additional line of railroad, said company could connect the fair-ground with its system of roads, and obtain the carrying of passengers to and from the fairs, subscribed a certain sum to the state board. Upon the faith of the subscription the state board performed the conditions of the contract on its part, thereby incurring expense, whereby the street railway company received the benefits of the contract; but the railway company refused to pay its subscription, on the ground of its want of power to bind itself by the contract. It was held that it was not at liberty to assume such position, having received benefit resulting from performance of the contract by the other party thereto. The court noted the distinction, often made, between the case where an act of a corporation is done in violation of an express statutory prohibition and the case where there is simply a defect of power, and adverted also to the distinction between the rights of the parties to a contract which remains wholly executory and the rights of parties to a contract when it has been wholly executed by the party dealing with the corporation; and the court held, in effect, that where the making of the contract is merely beyond the power of the corporation, but it has, by its promise, induced the other party to perform his part of the contract, so that upon failure of the corporation to perform

on its part the parties will not be left in their previous situation, and the corporation has received benefit from the performance of the other party, the corporation will be held liable upon the contract.

The legitimate effect of such a doctrine is far-reaching, and, in view of the great and increasing extent to which merely private business, such as that of the appellee, is carried on by corporate associations, we are inclined to the opinion that the tendency to the enforcement of such a principle is salutary, as being adapted to secure equitable results, however it may be thought to be contrary to original technical legal theories as to the nature, or capacity, attributes, or faculties of a corporation.

In *Wright* v. *Hughes*, 119 Ind. 324, it was said: "Like natural persons, corporations must be held to the observance of the recognized principles of common honesty and good faith, and these principles render the doctrine of *ultra vires* unavailing when its application would accomplish an unjust end, or result in the perpetration of a legal fraud. After a corporation has received the fruits which grow out of the performance of an act *ultra vires*, and the mischief has all been accomplished, it comes with an ill grace then to assert its want of power to do the act or make the contract, in order to escape the performance of an obligation it has assumed. * * * The rule is now too thoroughly established to be longer open to question, that where a contract has been executed and fully performed on the part of the corporation, or of the party with whom it contracted, neither will be permitted to insist that the contract was not within the power of the corporation. * * * The law never sustains the defense of *ultra vires* out of regard for the corporation. It does so only where the most persuasive considerations of public policy are involved."

The doctrine of these cases is established in this State. See *Board, etc.,* v. *Lafayette, etc., R. Co.,* 50 Ind. 85; *Louisville, etc., R. Co.* v. *Flanagan,* 113 Ind. 488; *Franklin*

*National Bank* v. *Whitehead*, 149 Ind. 560, 39 L. R. A. 725; *Bedford Belt R. Co.* v. *McDonald*, 17 Ind. App. 492; *International, etc., Co.* v. *Bratton, post,* 654; *Wittmer Lumber Co.* v. *Rice,* 23 Ind. App. 586.

The guaranty was not given merely for accommodation. It was partially for the benefit of the guarantor. The appellee had an interest in the doing of the work, the payment for which was guaranteed. Through the order of the Summit City Manufacturing Company to the persons for whom the articles were being made, the appellee was to receive payment of its claim on the Summit City Manufacturing Company for articles manufactured for it by the appellee in the course of its business. It held that order when it gave the guaranty. It was necessary that the finishing work done upon the articles by the appellant should be completed, so that the articles might be made ready for delivery to the persons who were to pay for them to the appellee directly pursuant to the order. The work was done by the appellant under its contract with the Summit City Manufacturing Company, but it was much in the nature of work done for the appellee at its special instance and request. In pursuance of the appellee's request, and in reliance upon its guaranty, the appellant incurred expense for labor and material for the actual benefit of the appellee. Having obtained such benefit in this way, the appellee's defense of *ultra vires* does not seem to agree with the sense of common honesty among business men, and does not appeal strongly to the conscience of the court. We do not understand that it would have been beyond the corporate power of the appellee to have agreed directly to pay the appellant for finishing the articles, so as to make available the order which the appellee held; and, if it might do so, it would seem reasonable to say that it might guarantee payment for the work. However this may be, the appellee having gained a pecuniary benefit from the performance of the contract on the part of the appellant, and at the expense of the

appellant incurred in such performance, the appellee is equitably bound upon the contract.

We regard the first paragraph of reply as sufficient. As to the second and third paragraphs, they can scarcely be said to have been argued before us. No authority has been cited in support of the proposition that a corporation may be held liable upon a contract beyond its power to make, on the ground that the corporation has been indemnified. It would seem that the giving of indemnity would not validate the contract. Besides, these paragraphs do not set forth the facts, as required in pleading under the code.

The judgment is reversed, with instruction to overrule the demurrer to the first paragraph of reply.