CHICAGO—FIRST DISTRICT—MARCH, 1915.    613

Central Trust Co. v. Smurr & Kamen Machine Co., 191 Ill. App. 613.

## Central Trust Company of Illinois, Defendant in Error, v. Smurr & Kamen Machine Company, Plaintiff in Error.

### Gen. No. 20,178.

1. CORPORATIONS, § 457*—*when liable on accommodation note.* A manufacturing corporation executing and delivering a promissory note to another corporation solely for the accommodation of the latter, who indorsed and sold it to an innocent purchaser for value before maturity and without notice that it was accommodation paper, is liable thereon at the suit of the bona fide holder.

2. BILLS AND NOTES, § 240*—*when purchase of accommodation paper bona fide purchaser.* One purchasing accommodation paper of a business corporation in good faith, before maturity, without notice of its character as accommodation paper and paying therefor the full face value of the paper, less six per cent. discount, is a bona fide purchaser for value.

PAM, J., took no part in the decision of this case.

Error to the Municipal Court of Chicago; the Hon. FRED C. HILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Affirmed. Opinion filed March 11, 1915.

ALBERT O. OLSON, for plaintiff in error; JAMES J. LEAHY, of counsel.

PAM & HURD, for defendant in error.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

The question presented in this case is whether the promissory note of an Illinois manufacturing corporation, which is executed and delivered to another corporation solely for the accommodation of the latter, and which is indorsed and sold to a third party, who buys in good faith before maturity and without notice that it was accommodation paper, can be enforced as against the maker.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Plaintiff in error (hereinafter called the defendant), an Illinois corporation engaged in the manufacture and sale of vehicles, machinery and tools, on July 28, 1913, executed and delivered its promissory note of that date for $675, due one hundred days after date with interest at six per cent., payable to the order of the Illinois Spring and Wire Company. Shortly after receiving it, the payee indorsed the note in blank, and sold it to defendant in error, a banking corporation (hereinafter called the plaintiff), who paid to the payee the face value of the same, less six per cent. discount. The bank had no information about the paper except what appeared on its face, and made no inquiry concerning the same, further than to look up the rating of the maker in the commercial agency reports. The payee was a depositor in the plaintiff's bank and had discounted other promissory notes in a similar manner prior to this occurrence. The note not being paid at maturity, the bank brought suit upon the same against the maker in the Municipal Court. Upon the trial, the defendant attempted and offered to prove that it had received no consideration or benefit of any kind for the note, and that it was given to the payee purely as an accommodation for the purpose of enabling the latter to raise money with which to meet and pay its (the payee's) obligations. The court sustained objections to the offered proof and, no other defense being interposed, entered a finding in favor of the bank for the full amount of the note and interest. This writ of error was sued out to reverse the judgment entered upon that finding.

The argument of counsel for the defendant proceeds upon the theory that the execution and delivery of the note in question was an *ultra vires* act on the part of the defendant corporation, and it is insisted that for this reason the note was and is absolutely void, even in the hands of a bona fide purchaser for value before maturity, without notice of the fact that it was accommodation paper.

In support of this contention, a number of Illinois cases are cited upon the general doctrine of *ultra vires*. All of these cases, however, are essentially different from this case, on the facts, and none of them presents exactly the same questions of law that are involved in this case. Most of the cases cited follow the principles first announced in the well-known case of *National Home Building & Loan Ass'n v. Home Sav. Bank,* 181 Ill. 35, to which they nearly all refer. The contract sought to be enforced in that case consisted of a clause in a deed of certain real estate to a building and loan association, whereby it was agreed that the association should assume and pay an existing incumbrance upon the same, and the court held not only that the assumption of such an indebtedness was beyond the statutory powers of the corporation, but that every person dealing with such a corporation is charged with notice of its powers and limitations and cannot plead ignorance in avoidance of the defense of *ultra vires*. The invalidity of the contract there in question was established when it appeared, by a mere examination of the statute, that the corporation had no power to make such a contract under any circumstances. In the opinion filed in that case, however, the following language is quoted with approval, from the case of *Davis v. Old Colony R. Co.,* 131 Mass. 258: "There is a clear distinction, as was pointed out by Mr. Justice Campbell in *Zabriskie v. Cleveland, Columbus & Cincinnati Railroad Co.,* 23 How. 381, 398, by Mr. Justice Hoar in *Monument Bank v. Globe Works,* 101 Mass. 57, 58 and by Lord Chancellor Cairns and Lord Hatherly in *Ashbury Railway Carriage & Iron Co. v. Riche,* L. R. 7 H. L. 668, 684, between the exercise by a corporation of a power not conferred upon it, varying from the objects of its creation as declared in the law of its organization, of which all persons dealing with it are bound to take notice; and the abuse of a general power, or the failure to comply with prescribed formalities or regulations, in a particular instance,

*when such abuse or failure is not known to the other contracting party."* (Italics ours.)

The opinion of Mr. Justice Hoar, thus referred to (*Monument Nat. Bank v. Globe Works,* 101 Mass. 57), unequivocally holds that the note of a manufacturing corporation in the hands of a holder in good faith for value, who took it before maturity and without knowledge that the maker had not received full consideration, can be enforced against the corporation, although it was made as an accommodation note. Starting with the proposition, as a settled rule of the law, that a manufacturing corporation has the general power to make a negotiable promissory note, the court holds that if the only defense to such a note is that this general power has been abused in the particular instance, *"the abuse not being known to the other contracting party,"* then *"the doctrine of ultra vires does not apply."* In support of this conclusion, Mr. Justice Hoar quotes the following from *Bissell v. Michigan Southern & N. I. R. Co.,* 22 N. Y. 289: "There are, no doubt, cases in which a corporation would be estopped from setting up this defense, although its contract might have been really unauthorized. It would not be available in a suit brought by a *bona fide* indorsee of a negotiable promissory note, provided the corporation was authorized to give notes for any purpose; and the reason is, that the corporation, by giving the note, has virtually represented that it was given for some legitimate purpose, and the indorsee could not be presumed to know the contrary. * * * Where the want of power is apparent, upon comparing the act done with the terms of the charter, the party dealing with the corporation is presumed to have knowledge of the defect, and the defense of *ultra vires* is available against him. But such a defense would not be permitted to prevail against a party who cannot be presumed to have had any knowledge of the want of authority to make the contract. *Hence, if the question of power depends not merely upon the law under which*

*the corporation acts, but upon the existence of certain extrinsic facts, resting peculiarly within the knowledge of the corporate officers, then the corporation would * * * be estopped from denying that which, by assuming to make the contract, it had virtually affirmed.''* (Italics ours.)

In *National Bank of Republic v. Young,* 41 N. J. Eq. 531, the same distinction is expressed as follows: "The general doctrine of the law is that where a corporation has power under any circumstances to issue negotiable paper, a *bona fide* holder has a right to presume that it was issued under the circumstances which give the requisite authority, and such paper is no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper." (Citing authorities.) "This doctrine is applied to commercial paper made by a corporation for the accommodation of a third person when in the hands of a *bona fide* holder, who has discounted it before maturity on the faith of its being business paper." The same principle is recognized in the following cases: *Jacobs Pharmacy Co. v. Southern Banking & Trust Co.,* 97 Ga. 573; *Madison & I. R. Co. v. Norwich Sav. Society,* 24 Ind. 457; *Lehigh Valley Coal Co. v. West Depere Agricultural Works,* 63 Wis. 45; *Auerbach v. Lesueur Mill Co.,* 28 Minn. 291.

These cases, we think, fairly reflect the general current of authority upon this question; and in view of the language quoted above from the opinion in *National Home Building & Loan Ass'n v. Home Sav. Bank, supra,* it cannot be held that the Supreme Court of this State intended to announce a different rule as applicable to cases of this character. If the contention of defendant's counsel were to prevail, it would charge every bona fide purchaser of the commercial paper of business corporations with the duty of ascertaining, at his peril, before purchasing the same, all the facts with reference to the consideration for which

such paper was issued. No case has been cited, and we know of none, in which such a rule has been announced with reference to ordinary business corporations, having the general power to issue negotiable paper. Doubtless all purchasers of commercial paper are chargeable with notice of such facts as appear upon the face of the paper offered for sale by a business corporation and of all limitations imposed by statute upon the powers of such corporations. But to carry this principle to the length contended for in this case would make it extremely hazardous for any bank to use the paper of such corporations in any business transaction.

It is also contended that the plaintiff was not a bona fide holder for value. This contention is based upon a statement in the brief of counsel that the bank credited the account of the payee at the bank with the proceeds of the note by way of deposit, and that there is no evidence that such deposit had been withdrawn. As we read the record, there is no evidence that the bank credited the account of the payee in the manner stated. On the contrary, the undisputed testimony is that the bank paid full face value for the note, less six per cent. discount. There is no merit in the contention.

Finding no reversible error in the record, the judgment of the Municipal Court will be affirmed.

*Affirmed.*

MR. JUSTICE PAM took no part in the decision of this case.