BAY CITY BANK & TRUST CO. v. RICE-STIX DRY GOODS CO. (No. 7381.)*

(Court of Civil Appeals of Texas. Galveston. April 10, 1917. Rehearing Denied May 3, 1917.)

BANKS AND BANKING ☞101 — PURCHASE OF ACCOUNT BY BANK—ULTRA VIRES.

Where a bank, to which a merchant owed $6,500 when he made a general assignment for the benefit of his creditors, shortly thereafter purchased a wholesaler's account against the merchant of $3,128.35, for $2,650, and realized therefrom as a dividend from the merchant's estate $1,048.50, which it kept, it was estopped from setting up, as a defense to action by the wholesaler for the unpaid balance of the $2,650 for the account, that such purchase was ultra vires and not binding on it, it having never refused to pay such balance until after all the merchant's assets had been disposed of, when it was too late for the wholesaler to be put back in statu quo or to take any steps for its own protection, such as bidding at the sale of the assets or otherwise, irrespective of Vernon's Sayles' Ann. Civ. St. 1914, arts. 376, 378, 546, as to powers of banks.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 237, 238.]

Appeal from District Court, Matagorda County; Sam'l J. Styles, Judge.

Action by the Rice-Stix Dry Goods Company against the Bay City Bank & Trust Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Gaines & Corbett, of Bay City, for appellant. W. S. Holman, of Bay City, and J. D. Williamson, of Waco, for appellee.

---

GRAVES, J. Appellee dry goods company sued appellant bank for $1,150 claimed as a balance due on the agreed purchase price of $2,650 for an account against Pitluk, totaling $3,128.35, which it alleged the bank had bought from it, and upon which agreed price had only paid $1,500, leaving the said balance sued for. It was alleged that the bank had first become a guarantor of Pitluk's account to the extent of $2,500 through a letter to that effect dated October 5, 1912, signed by its then cashier, addressed to and delivered to appellee in St. Louis by Pitluk, to whom, upon the faith, credit, and reliance put by appellee in said guaranty of the bank, appellee had at that time sold and delivered merchandise upon credit to Pitluk in an amount greater than such guaranty; that later, on March 20, 1914, appellee had delivered to Pitluk, at Bay City, $2,775.50 worth of goods, which it had refused to deliver on Pitluk's own responsibility alone, on credit, under agreement then and there made between it and the bank's president, active vice president (who, as cashier, had signed the said letter of October 5, 1912), and cashier, that the bank's guaranty contained in said prior letter was a continuing one, that it was still liable thereunder to the extent and amount thereof, on the goods at this latter date so released to Pitluk, and that the bank would then pay appellee $1,000 on Pitluk's back account with it, which was done; that still later, on or about September 29, 1914, appellee delivered to the bank a formal transfer and assignment, evidencing said purchase by the bank of appellee's account against Pitluk, then amounting to $3,128.35, for $2,650 payable in installments of $500 each; that only three of these installments had been paid, and that the $1,150 balance sued for was past due and unpaid.

After the court had overruled a number of special exceptions presented by the bank, it answered (1) denying that it was a guarantor of said indebtedness to the extent of $2,500, or in any sum whatsoever, and denying the power and authority to guarantee under its charter, and the power and authority of its directors or officers to make such guaranty, and denying that any lawful or valid agreement was made for the purchase of said account; (2) setting out that the agreement of guaranty was unlawful, unauthorized, illegal, and ultra vires; (3) that the assignment was in furtherance of an illegal act, was not a bona fide sale, and was made when Pitluk was insolvent, and as the result of a threat made by the appellee on the so-called guaranty; (4) that, under a mistaken impression of the law and the facts on the part of appellant, it paid to the appellee the sum of $1,500 on account of such claim, and alleged that the force and effect of the transactions between the appellee and the appellant was to make the latter the trustee or agent of the former for the collection of said account; and that said trust had been fulfilled, and that it was only liable for the amount it had collected thereon.

By way of cross-action, the bank alleged that at a sale of Pitluk's stock the same brought only $34^1/_{20}$ on the dollar, and that the amount of the dividend received by the bank was $1,048.50, and that it had, through said $1,500, paid to the appellee the sum of $451.50 in excess of that sum, and asked for a recovery of the same.

The case was tried by the court without the intervention of a jury, and judgment rendered against appellant on its cross-action, and in favor of appellee for the amount sued for, from which this appeal is prosecuted.

The facts found by the trial court, which were amply sustained by the evidence, established the preceding allegations of appellee dry goods company; and, further, that at the date of said letter of October 5, 1912, and on all said dates thereafter, appellant bank was also a creditor of Pitluk, independently of its transactions with appellee dry goods company in relation to him; that on said March 20, 1914, when the $2,775.50 worth of goods were so delivered at Bay City to Pitluk, he owed the bank about $5,500, its officers were anxious for him to get the goods, and by his so getting them his assets were increased by $2,775.50, and the bank obtained greater security for the payment of its debt against him; that Pitluk made a general assignment for the benefit of his creditors August 31, 1914, being then indebted to the bank in the sum of $6,500, which indebtedness also existed at the date said bank purchased for $2,650 appellee's account against him, and that it finally realized on said account $1,048.50, which it kept.

Upon the case thus made and tried, the court's conclusions of law were as follows:

"Under the above state of facts, I conclude, as a matter of law, that the Rice-Stix Dry Goods Company, having performed its part of the contract and sold and delivered merchandise to I. L. Pitluk, based upon the guaranty of the Bay City Bank & Trust Company, and the security of the Bay City Bank & Trust Company being increased by the merchandise so sold and delivered to said I. L. Pitluk, said bank is estopped from setting up that the guaranty in question was ultra vires, and that it was not liable therefor. I further conclude, as a matter of law, under the findings of fact, that the Bay City Bank & Trust Company, being a creditor of I. L. Pitluk, to the amount and extent of $6,500, was authorized, in due course of business, to purchase the account of Rice-Stix Dry Goods Company against I. L. Pitluk, and agreed to pay therefor the sum of $2,650; and that by its acceptance of the assignment of said account, by accepting the benefits thereunder, and agreeing to pay therefor the sum of $2,650, that it became liable for the payment of said sum on the days and dates as agreed upon. I further conclude, as a matter of law, that the Rice-Stix Dry Goods Company, having assigned its account to the Bay City Bank & Trust Company upon the promise and agreement of the bank to pay $2,650 therefor, and having executed its contract, that the Bay City Bank & Trust Company is estopped from claiming that its

agreement and purchase of such account and to pay therefor the sum of $2,650 was ultra vires."

Appellant bank assails these conclusions under three groups of assignments: Under Nos. 1, 2, and 3 it is contended that the alleged contract of guaranty was ultra vires, in violation of statutory regulations, without authority, and absolutely void; under Nos. 4, 5, and 6 it is claimed there was no ratification of the so-called guaranty, and consequently there was no estoppel; by Nos. 7 to 11, inclusive, it is finally contended that, even if there was a contract of guaranty made and ratified, or estoppel arose from the acts of the bank, yet the contract was malum prohibitum and against public policy, and the bank's only resultant duty was to return to the dry goods company the $1,048.50 so received from the assignment of the account, which it was claimed had been overpaid, leaving an excess of the difference between the $1,500 paid by it to appellee and the $1,048.50 thus received by it for appellee's account, to wit, $451.50, for which it sought judgment by the cross-action.

Under the view we take of the case, it is deemed unnecessary to discuss these contentions seriatim, concluding, as we do, that the trial court did not err in holding that, under the facts shown, the bank was estopped from setting up in defense the claim that its acts were ultra vires and not binding upon it; indeed, while we need not and do not rest the determination of the case upon that consideration, we are unwilling to hold that the transaction culminating in the purchase, at a strong discount by the bank, of the dry goods company's account against Pitluk, under the conditions shown, was ultra vires the legitimate powers of the bank. It must not be overlooked that at all times throughout the entire course of these transactions the bank itself was a heavy independent creditor of Pitluk, a local merchant in its home town, and that as such it must have had an eye to the main chance—that is, the protection of its own interests and the ultimate collection of its own debt against him—in its dealings concerning him with appellee dry goods company. In fact, at the very time it purchased the appellee's account it then held a separate additional indebtedness of $6,500 against him, and his assets were undisposed of. Prior to that, and while his business was yet a going concern, when on March 29, 1914, the bank had induced the dry goods company to deliver to him the $2,775.50 worth of goods, Pitluk's separate debt to the bank was $5,500. While the bank now insists that it acted in all these ad interim transactions under the then compelling (and since discovered mistaken) belief that it was liable under its guaranty, this consideration cannot, by reflex action, relate back to action then taken and divest it of all imputation that it was seeking the security, enforcement, and collection of its own debt. Especially is this true since it was on the ground, in position to watch the course of Pitluk's business, and did so in that it followed him through and appropriated the results from the final sale of his entire assets, to the exclusion of and without further notice to or concern about the dry goods company, and never refused to pay it the agreed price for the assigned account until January 7, 1915, after all Pitluk's assets had been disposed of. It was then too late for the dry goods company to in any manner be put back in statu quo as to its account against him, or for it to take any action for its own protection, such as bidding at the sale of the assets or otherwise.

The facts were undisputed upon the entire course of the dealings concerning Pitluk's affairs between the bank and the dry goods company. After the latter sold and delivered to the former the account, it relied alone upon the bank's agreement to pay it the $2,650 specified, and took no further steps to protect its interest; nor did it know that the bank would raise any question about or attempt to repudiate the obligation, after thus accepting the benefits of it, until after Pitluk's entire assets had been so sold out at auction, and no remedial measures were longer possible.

The force of the facts themselves evidencing this continued course of dealings between the parties, we think, makes the determination of the question of whether or not the original letter of October 5, 1912, was a continuing guaranty, and, if so, whether it was or was not ultra vires, unnecessary; because, as stated, the bank subsequently purchased the account, took its chances on realizing therefrom, appropriated to its own use the returns it received, and never complained until the net results had proven unsatisfactory, and it was then impossible for it to place the dry goods company back where it was prior to the purchase.

But the bank still answers that its officers had no authority to bind it in purchasing the account. It apparently forgets that every opportunity was afforded it to be sure about the matter, and that, as late as a month after delivery to it of the formal instrument assigning the account, the settlement of the matter, as represented by the agreed purchase of the account, was ratified and confirmed by its board of directors in the following action:

"Special meeting of the board of directors of the Bay City Bank & Trust Company, held in the office of the bank, October 20, 1914, at 9 a. m.

"The meeting was called to order by the president, Mr. Poole, with the following members of the board present: A. D. Thompson, John W. Gaines, Louis Le Tulle, P. G. Huston, Jas. W. Rugely, and Geo. R. Burke.

"The matter of the I. L. Pitluk loan, and the guaranty of his account with the Rice-Stix Dry Goods Company by the officers of the bank early in the summer, was fully discussed, also the proposition of the settlement of this guaranty submitted by J. D. Williamson, attorney at law,

of Waco. On motion of J. W. Rugely, seconded by L. Le Tulle, the cashier was instructed to remit the Rice-Stix Dry Goods Company, of St. Louis, Mo., $2,650, in monthly payments of $500, in accordance with the terms of their offer of settlement. T. J. Poole, President. "Geo. R. Burke, Secretary."

Not only so, but its above-recited course thereon ensued without notice or protest of any kind to appellee until Pitluk's business had been obliterated.

Under the circumstances shown, we do not think it can be said that the bank was not acting for its own interest toward the securing and collecting of its debt. Our banking act (Vernon's Sayles' Statutes, art. 376) provides, as to the powers of a bank, among other powers it shall have the powers of "buying, selling and discounting negotiable and nonnegotiable paper of all kinds, as well as all kinds of commercial paper." Article 378, as to the duties of directors, provides that the directors shall meet at least once per month to pass upon the business of the bank back to the previous meetings, and no bills payable shall be made, and no bills shall be rediscounted by the bank except with the consent of the board of directors. Article 546 provides that a bank shall not employ its moneys in trade or commerce, by buying and selling ordinary goods, chattels, wares, and merchandise; provided, that it may sell all kinds of property which may come into its possession as security for loans or in the ordinary collection of debts.

If the bank, under these statutes, would have had a right to purchase Pitluk's note to the dry goods company, no good reason occurs to us why it might not, in the effort to secure or collect its debt, have purchased with equal right an account against him, and have agreed to pay therefor.

But whether it had the authority to make the contract herein sued upon or not, we think the acts of the bank, under the conditions here shown, clearly estopped it from claiming that its agreement to purchase and pay for the account was ultra vires. The rule in Texas upon this subject has been generally stated as follows:

"Though a corporation may exceed its charter power in making a contract, yet, when the contract is executed and the company has received its benefits, it is estopped to deny the authority to make it." Texas Western Ry. Co. v. Gentry, 69 Tex. 625, 8 S. W. 98.

"It seems now to be settled, by the great weight of authority, that where there is a question of a contract between a corporation and another party, and the contract has been performed by the other party, and the corporation has received the benefit of the contract, it will not be permitted to plead that on entering into the contract it exceeded its chartered powers." Bond v. Terrell Mfg. Co., 82 Tex. 309, 18 S. W. 691; Kincheloe Irr. Co. v. Hahn Bros., 105 Tex. 231, 146 S. W. 1187; First Nat. Bank of Greenville v. G. Oil Co., 24 Tex. Civ. App. 645, 60 S. W. 828; North Tex. St. Bank v. Crowley S. Co., 145 S. W. 1027; Dexter v. Bank, 180 S. W. 1172; Panhandle Nat.

Bank v. Emery, 78 Tex. 499, 15 S. W. 23; Taylor Feed Co. v. Bank, 181 S. W. 534; Guffey Pet. Co. v. Townsite Co., 48 Tex. Civ. App. 555, 107 S. W. 609; Ry. Co. v. Worthington, 27 S. W. 746; Land Co. v. Exall, 159 S. W. 474; Waller v. Merc. Co., 141 S. W. 833; Smith v. Ferries Ry. Co., 51 Pac. 710:[1] Colorado Loan Co. v. Grand Valley Canal Co., 3 Colo. App. 63, 32 Pac. 178; Union Hdw. Co. v. Plume Mfg. Co., 58 Conn. 219, 20 Atl. 455; People v. Suburban R. Co., 178 Ill. 594, 53 N. E. 349, 49 L. R. A. 650; Flint Mfg. Co. v. Kerr-Murray Mfg. Co., 24 Ind. App. 350, 56 N. E. 858; Chapman v. Iron-Clad Rheostat Co., 62 N. J. Law, 497, 41 Atl. 690; San Antonio v. Mehaffy, 96 U. S. 315, 24 L. Ed. 816.

It follows from what has been said that all assignments must be overruled, and that the trial court's judgment must be affirmed; and it has been so ordered.

Affirmed.

───────

[1] Reported in full in the Pacific Reporter; reported as a memorandum decision without opinion in 119 Cal. xvii.

━━━━━━

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes